471 P.2d 278

In the Matter of the ESTATE of Lois JACKSON, Deceased.

Ina Marie ENSLEY, Appellant,

v.

VALLEY NATIONAL BANK of Arizona, Executor, R. J. Bell, Ira Lee Poe, Thelma Thompson, State of Arizona, Appellees.

No. 10018-PR.

Supreme Court of Arizona, In Banc.

July 2, 1970.

Rehearing Denied Sept. 15, 1970.

Powers, Boutell, Fannin & Ridge, by James Powers, Phoenix, for appellant.

Gust, Rosenfeld & Divelbess, by Richard H. Whitney, Phoenix, for appellee Valley National Bank.

Paul W. Colarich, Jr., Tucson, for appellees R. J. Bell, Ira Lee Poe and Thelma Thompson.

Gary K. Nelson, Atty. Gen., by James S. Tegart, Asst. Atty. Gen., Phoenix, for appellee State of Arizona.

HAYS, Justice.

This case is before us on a petition for review of a decision of the Court of Appeals, 11 Ariz.App. 424, 464 P.2d 1011 (1970), affirming the judgment of the trial court. The decision of the Court of Appeals is vacated, and the judgment of the trial court is reversed.

Lois Jackson died without issue on October 4, 1967. In her will, executed August 10, 1950, she provided that after all her debts and expenses of last illness and funeral expenses had been paid:

"SECOND: I give, devise and bequeath all of my estate, of whatsoever kind and nature, and wheresoever situated, which I may own and have the right to dispose of at the time of my death, to my husband, GEORGE JACKSON.

In the event my said husband shall predecease me, then I direct that my estate be divided into two (2) equal shares, and I give, devise and bequeath one (1) of such shares to my husband's daughter, INA MARIE ENSLEY, of Las Vegas, Nevada, and (1) of such shares to my brother, CLAUD FLANNAGAN, of 718 North 10th Street, Abilene, Texas."

Lois Jackson was predeceased by her husband and also by her brother, Claud Flannagan, who died without issue. After a hearing before a Commissioner of the Superior Court in Maricopa County on November 11, 1968, the Commissioner made findings of fact and conclusions of law that the lapsed portion of the residuary bequest should pass by intestate succession to the appellees, R. J. Bell, Ira Lee Poe, Thelma Thompson, and Inezia Watkins, who are descendants of the maternal grandparents of Lois Jackson.

On appeal the question is: Should a lapsed portion of a residuary bequest pass to the surviving residuary beneficiaries or should it pass intestate to the heirs-at-law of the testator, in the absence of language in the will which tends to show the disposition which the testator intends to make of it under the circumstances? The Court of Appeals held that the lapsed portion of the residuary estate should pass intestate to the heirs-at-law of the testatrix. We do not agree.

The law regarding the devolution of a lapsed portion of a residuary estate is not uniform. The weight of authority is that the lapsed portion of the residuum does not (itself) pass into the remainder of the residuum, but passes to testator's next of kin as intestate property. In re Boyle's Estate, 123 Colo. 448, 231 P.2d 465 (1951); 6 Bowe-Parker: Page on Wills § 50.18 (3 ed.1962). Although this rule has been consistently applied in cases where the necessary conditions were present, there has been very little discussion of the rule and the reasons underlying it. 57 Am.Jur., Wills § 1453.

Basically, two arguments have been made in support of the majority or English position: (1) A residue is already part of the residue of an estate and therefore can-

not pass into the residue upon a lapse of a portion, and (2) to allow the lapsed residue to pass to the surviving residuary legatees would defeat the intent of the testator who intended the residuary beneficiaries to receive only the portion specified in the will and no more. In re Moloney's Estate, 15 N.J.Super. 583, 83 A.2d 837, 838 (1951). *See also*: Bagwell v. Dry (1721) 1 P. Wms. 700, 24 Eng.Rep. 577; Skrymsher v. Northcote (1818) 1 Swanst. 566, 36 Eng. Rep. 507; In re Dunster (1909) 1 Ch. (Eng.) 103. For a comprehensive discussion of both the majority and minority positions, *see*: Annot. 28 A.L.R. 1237 (1924), supp., 139 A.L.R. 868 (1942); 36 A.L.R.2d 1117 (1954).

The majority rule has been the subject of criticism by law review writers,[1] and many of the courts which follow the majority rule have done so while expressing their dissatisfaction with it. The court in In re Gray's Estate, 147 Pa. 67, 23 A. 205 (1892) followed the majority rule because of *stare decisis* but offered the following remarks:

"The rule thus established does not commend itself to sound reasoning, and is a sacrifice of the settled presumption that a testator does not mean to die intestate as to any portion of his estate, and also of his plain actual intent, shown in the appointment of the general residuary legatees, that his next of kin shall not participate in the distribution at all. The rule is in fact a concession to the set policy of English law * * * to keep the devolution of property in the regular channels, to the heirs and the next of kin, whenever it can be done." 23 A. at p. 206.

In Wright v. Wright, 225 N.Y. 329, 122 N.E. 213 (1919) the court expressed its dissatisfaction with the argument that it could not have been the intent of the testator in making a residuary bequest that that bequest might be augmented by the lapse of another bequest from the residuum, saying:

"While this course of reasoning has some apparent force where the residuum consists of a definite sum or specific property and where it might be assumed that the testator by the residuary clause intended to make a definite bequest, it is difficult to appreciate the force of the reason in such a case * * * where the residuum to be disposed of consists of a certain portion of an estate of unknown value and where there seems to be no good ground for withholding application to the residuary clause and lapsed legacy of the principles ordinarily covering such a situation." 122 N.E. at p. 217.

Justice Cardozo, in Oliver v. Wells, 254 N.Y. 451, 173 N.E. 676, 678 (1930) described the rule as a technical rule which the courts reluctantly enforce "when tokens are not at hand to suggest an opposite intention. * * *"

The majority rule is not without its defenders. It was held in In re McCoy's Estate, 193 Or. 1, 236 P.2d 311 (1951) that the majority rule was a salutary rule. The court reasoned that since the legislature had provided a method of devolution of property of a deceased any property which was not disposed of by the will should pass by the laws established. Therefore, where there is no express or implied provision for survivorship in case of a lapse of a portion of a residuary estate it is only logical that it pass as intestate property as provided by the legislature.

Several of the courts which follow the majority rule have developed an exception that the rule will readily yield to contrary indications gathered from the will as read in light of the attending circumstances. The will in In re Nielsen's Will, 256 Wis. 521, 41 N.W.2d 369 (1950) left the residuum of testator's estate to his brother

1. *See, e. g.*, 26 Fordham L.Rev. 377 (1957); 36 Harv.L.Rev. 230 (1922); 8 Hastings L.J. 337 (1957); 55 Mich.L.Rev. 1202 (1957); 9 N.Y.U.Intra.L.Rev. 262 (1954); 18 Va.L.Rev. 333 (1931); 7 Wyo.L.J. 143 (1953); 31 Yale L.J. 782 (1922). *Contra*: 23 Rocky Mt.L.Rev. 220 (1950).

Henry, his wife Helga and his son Vernon. No one else was named as beneficiary even though testator had been survived by ten sisters and brothers. Testator's wife Helga predeceased him. The court found that there had existed a very close relationship between testator, his brother Henry, his wife Helga and his son Vernon, while testator felt a dislike amounting to coolness towards his other brothers and sisters. Under these circumstances the court found it evident that it was the testator's intention to exclude from his estate all brothers and sisters not mentioned in the will. It was held, therefore, that Helga's lapsed portion of the residuary estate should pass to the remaining residuary legatees. *See also*: In re Moloney's Estate, supra; In re Baumann's Will, Sur., 97 N.Y.S.2d 478 (1950); In re Blood's Estate, Sur., 115 N. Y.S.2d 220 (1952); In re Waterbury's Will, 163 Wis. 510, 158 N.W. 340 (1916).

Several jurisdictions have abolished the majority rule by statute[2] and a few others judicially. The majority rule was expressly rejected in Corbett v. Skaggs, 111 Kan. 380, 207 P. 819 (1922):

"We regard the rule that lapsed shares of deceased residuary legatees shall be treated as intestate property as in direct conflict with the one to which this court is definitely committed, that the actual purpose of the testator, so far as it can be ascertained, must be given effect. The presumption against intestacy of any part of the estate is a means of carrying out this policy which is disregarded by taking lapsed legacies out of the residue for the benefit of those who would inherit from the decedent in the absence of a will. The reasons for allowing lapsed specific legacies to fall into the residue apply with equal force in favor of allowing all the residue to go to the surviving residuary legatees in the

case of the death of one of them, instead of turning over a part of it to persons for whom other provision had been made, or who had not been referred to in the will at all. The statement sometimes made in support of the latter practice—that the share of a deceased residuary legatee cannot fall into the residue, because it is itself a part of the residue—appears rather to play upon words than to point out any real difficulty." 207 P. at p. 822.

More recently, the Supreme Court of Vermont rejected the majority rule holding that to allow a lapsed share of a residuary legacy to pass to the surviving residuary legatees is substantially no different from allowing lapsed specific bequests to pass under the residuary clause. And to say that a lapsed residuary legacy cannot fall into the residue because it is already in the residue is merely "confusing simile for substance." In re Slack Trust, 126 Vt. 37, 220 A.2d 472, 473 (1966). *See also* West v. West, 89 Ind. 529 (1883).

We are of the opinion that it is probably more in accord with the testator's intent that a lapsed residuary bequest remain in the residue and pass to the surviving residuary legatees. This is in keeping with the policy of this Court to favor testacy over intestacy. In re Conness' Estate, 73 Ariz. 216, 240 P.2d 176 (1952).

We hold, therefore, that the lapsed share of the residuary legatee Claud Flannagan should pass to the surviving legatee-appellant Ina Marie Ensley.

Reversed and remanded for proceedings consistent with this decision.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and McFARLAND, JJ., concur.

---

2. *See* Pa.Stat.Ann., Tit. 20, § 180.14(10) (1950); N.J.Stat. §§ 3A:3–13 to 3A:-3–14 (1951), N.J.S.A.; Ohio Rev.Code Ann. § 2107.52 (Page 1953); R.I.Gen. Laws Ann. § 33–6–20 (1956); Ill.Rev. Stat. ch. 3, § 49 (1959).