200 P.3d 1024

In the Matter of the ESTATE OF Annabel ZILLES, Deceased.

Stephen Zilles, in his capacity as Successor Trustee of the Trust, and in his individual capacity; Dennis J. O'Connor; Gerald W. Edson; Susan E. Raynal; Linda J. Oakley, Marian Edson Fleming, Edward G. Edson; Marcia Basilius, David Thompson, Gary Thompson and Michele May, Appellees,

v.

The American Legion; Shriners Hospitals for Children, Appellants.

No. 1 CA–CV 07–0893.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 23, 2008.

Burch & Cracchiolo By Daryl Manhart, Anthony R. Iniguez, Melissa Iyer, Phoenix, Attorneys for Appellees Oakley/Fleming/Edson/Zilles.

Quindry & Koniuszy By Phillip C. Quindry, Mesa, Attorneys for Appellee Zilles, as Trustee.

Harry P. Friedlander, Mesa, Attorney for Appellees Basilius/Thompson/May.

Dennis J. O'Connor, Port Huron, MI, In Propia Persona.

Gerald W. Edson, Port Huron, MI, In Propia Persona.

Susan E. Raynal, Gross Point Woode, MI, In Propia Persona.

Quarles & Brady, LLP By James A. Ryan, Lauren Elliott Stine, Phoenix, Attorneys for Appellants.

## OPINION

SWANN, Judge.

¶ 1 This appeal presents the question whether a lapsed gift of residuary trust assets passes to the trustors' heirs according to the law of intestacy or to the other residual beneficiaries identified in the trust. For the reasons discussed below, we hold that such a gift passes to the remaining residual beneficiaries and reverse the order of the trial court.

## FACTUAL BACKGROUND

¶ 2 On December 26, 1997, Frederick A. Zilles and his wife Annabel Zilles (collectively, the "Trustors") executed the Frederick A. Zilles and Annabel Zilles Revocable Living Trust (the "Trust"). The pertinent provisions contained in Article V of the Trust read as follows:

C. *Distribution of Residual Trust Upon Death of Surviving Trustor.* Upon the death of the surviving Trustor, the Trustee shall ... distribute the Residual Trust as follows:

1. *Distribution of Personal Effects.* The Trustee shall distribute the Trustors' personal effects ... to such persons, who are then living, as are set forth on a list in either of the Trustors' handwriting or signed by either of the Trustors, which will be found either with the Surviving Trustor's Will, among the surviving Trustor's personal papers, or attached as Schedule B to their Trust Agreement. Any personal property not otherwise distributable by such a list shall be distributed in accordance with the following paragraph C.2. of this Article V.

2. *Distribution of Trust Balance.* After making, in full, any distributions described in the preceding paragraph C.1. of this Article V, the Trustee shall ... distribute the remaining balance of the Residual Trust as follows:

a. The Trustee shall donate the Trustors' art collection of decorative ivory, porcelain lamps and rugs to an organization or entity which is qualified under Section 501(c)(3) of the Internal Revenue Code and which meets the requirements and criteria set forth on Schedule C to this Trust. Ninety percent (90%) of the remaining balance of the Residual Trust shall be donated to such organization or entity, along with the art collection, to be used in connection with the maintenance, storage and display of the art collection, or for other purposes related thereto.

b. The Trustee shall distribute Five Percent (5%) of the Residual Trust to the SHRINERS CRIPPLED CHILDRENS HOSPITAL of Chicago, Illinois.

c. The Trustee shall distribute Five Percent (5%) of the Residual trust [sic] to the AMERICAN LEGION.

D. *Distribution of Residual Trust Where Trustors And All Their Beneficiaries Are Deceased.* If at the time of death of the surviving Trustor, or at any later time before full distribution of the Residual Trust, all the Trustors' beneficiaries are deceased, the Residual Trust shall thereupon be distributed one-half (1/2) to those persons who would then be the heirs of the husband Trustor and one-half (1/2) to those persons who would then be the heirs of the wife Trustor, their identities and respective shares to be determined as though the deaths of the Trustors had then occurred and according to the laws of the State of Arizona then in effect relating to the succession of separate property.

¶ 3 Frederick A. Zilles died on October 5, 1998, and Annabel Zilles died on February 23, 2005. Before her death, Annabel Zilles sold her entire art collection, rendering impossible the distribution provided in paragraph C.2.a. The total value of the remaining Trust assets is approximately $410,000. On October 26, 2006, Stephen Zilles (hereinafter the "Petitioner"), as successor trustee, peti-

tioned the court for instructions as to the distribution of the Trust. The Petitioner could not locate Schedule C to the Trust. The court set a hearing for December 14, 2006, which it commenced, but then continued to enable the Petitioner to provide notice to all of the Trustors' heirs.[1]

¶ 4 The American Legion and Shriners Hospitals for Children (collectively, the "Charities") submitted a memorandum of law in response to the petition for instructions, arguing that the corpus of the residual trust should be divided and distributed to them as the remaining residuary beneficiaries. The court, at the February 1, 2007 hearing, set deadlines for responses to the Charities' memorandum of law and the Charities' reply. Two responses were filed on behalf of the Trustors' heirs arguing that because the gift prescribed by paragraph C.2.a. failed, the Trustors' intent was that their heirs were entitled to the residual trust.

¶ 5 After oral argument the court took the matter under advisement and subsequently ruled, finding in relevant part as follows:

Annabel Zilles, the surviving trustor, had intended to leave certain art pieces to a museum under paragraph C.2.a., but apparently could not find one that met her approval. Before her death she disposed of the art pieces that were to be distributed under paragraph C.2.a, and never identified a 501(c)(3) devisee.

The distribution of a failed devise should be made in an attempt to further the intent of the trustors, as determined from the four corners of the trust instrument. *In Re Estate of Gardiner*, 5 Ariz.App. 239, 240, 425 P.2d 427, 429 (1967)[sic] Although inartfully drawn, paragraphs C and D evidence a clear intent to provide 1) a limited devise to the Shriners and American Legion and 2) that a failed devise should revert to the trustors' heirs. It is therefore probably more in accord with the trustors [sic] intent that this failed devise be distributed to surviving heirs than to increase a minimal charitable devise by nine hundred percent.

---

1. The Petitioner and David Frederick Zilles are the two nephews, and only heirs, of Frederick A. Zilles. The heirs of Annabel Zilles are distant relatives who are making claims.

Furthermore, in the absence of an ascertainable beneficiary, a trust reverts to the trustor's successors. Restatement Third, Trusts § 44.

¶ 6 A final written order memorializing the decision was signed and entered on October 16, 2007. The Charities timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(J) (2003).

## DISCUSSION

¶ 7 The Charities argue that under controlling Arizona authority, the residual trust should be distributed to them as the remaining residual beneficiaries. When the facts are undisputed we determine de novo whether the trial court correctly applied the law to those facts. *In re Estate of Headstream*, 214 Ariz. 530, 532, ¶ 9, 155 P.3d 1054, 1056 (App. 2007). Additionally, we review the trial court's conclusions of law de novo. *Id.* at 532–33, ¶ 9, 155 P.3d at 1056–57.

¶ 8 We must first attempt to determine who is entitled to the ninety percent of the Trust estate that is the subject of the failed gift. The overriding goal in the interpretation of a trust document is to ascertain the intent of the trustor. *In re Estate of Gardiner*, 5 Ariz.App. 239, 240, 425 P.2d 427, 429 (1967); *see also* A.R.S. § 14–1102(B)(2) (2005) ("The underlying purposes and policies of [the Probate Code] are: ... (2) To discover and make effective the intent of a decedent in distribution of his property."). To ascertain the intent of a trustor, we consider the text of the trust "as a whole and, when appropriate, the circumstances at the time it was executed." *In re Estate of Pouser*, 193 Ariz. 574, 578, ¶ 10, 975 P.2d 704, 708 (1999) (citation omitted) (construing a will). "The intent is to be ascertained from the contents within the four corners of the instrument, *including the general plan or scheme thereof*, and when necessary or appropriate, the circumstances under which the [instrument] was made." *Gardiner*, 5 Ariz. App. at 240–41, 425 P.2d at 428–29 (citation omitted); *see also* Restatement (Third) of Trusts § 4 cmt. a (2003) (noting that the intention of the trustors is determined as of the time of creation of the trust).

¶ 9 The Trustors' heirs argue that the Trust is ambiguous. A trust provision is ambiguous when it is susceptible to two or more interpretations. *In re Estate of Smith*, 119 Ariz. 293, 296, 580 P.2d 754, 757 (App. 1978). A latent ambiguity (one not apparent from the face of the document) may exist upon consideration of extrinsic circumstances. *In re Estate of Shields*, 84 Ariz. 330, 332, 327 P.2d 1009, 1010 (1958). Here, the language of the Trust is clear and unambiguous, but a latent ambiguity exists because of several extrinsic facts, namely the absence of (1) an art collection, (2) the Schedule C contemplated by the Trust itself, and (3) an express contingent beneficiary to receive the ninety percent of the Trust estate that is the subject of the failed gift. *See Shields*, 84 Ariz. at 331, 327 P.2d at 1010 (finding the disposition of non-existent property latently ambiguous); *see also In re Estate of Blacksill*, 124 Ariz. 130, 132, 602 P.2d 511, 513 (App.1979) (finding the disposition to non-existent beneficiaries latently ambiguous). Where ambiguity exists, extrinsic evidence is admissible to ascertain what the Trustors intended. *See Pouser*, 193 Ariz. at 579, ¶ 10, 975 P.2d at 709 (construing a will). But extrinsic evidence is not admissible to contradict the plain language of the trust. *Id.*

¶ 10 Initially, the Heirs requested discovery to help determine Annabel Zilles' actual intent. The Heirs alleged, with no support, that Annabel Zilles was "convinced that she could not find an adequate organization that would take and care for her art collection in the way that she wanted." Counsel for the Heirs later retreated from the request for discovery and indicated that he was "ready to move forward just on arguments." The trial court, however, apparently took the unproven allegation as true when issuing its ruling, finding that "Annabel Zilles ... had intended to leave certain art pieces to a museum ... but apparently could not find one that met her approval." Consideration of this unsupported factual allegation was clearly erroneous, but the trial court's consideration of the undisputed facts that Annabel Zilles disposed

of her art collection and never identified a 501(c)(3) devisee was appropriate.

¶ 11 A trustor's intention must be determined in view of the circumstances existing at the time of the creation of the trust. *In re Daley's Estate,* 6 Ariz.App. 443, 447, 433 P.2d 296, 300 (1967) (citing *Olivas v. Bd. of Nat'l Missions of Presbyterian Church,* 1 Ariz.App. 543, 405 P.2d 481 (1965)). The Trust was created in 1997 and named three charitable beneficiaries of the "remaining balance of the Residual Trust." Those beneficiaries were Shriners Crippled Childrens Hospital,[2] the American Legion and the unnamed 501(c)(3)[3] entity that was to have been selected according to criteria set forth in Schedule C. No individuals were named as beneficiaries of the Trust. Paragraph C.1. provides that personal effects should be distributed as set forth in a list prepared by the Trustors, but the record reveals no evidence that such a writing was found. Paragraph C.1. further provides that anything not distributed by such a list should be distributed pursuant to paragraph C.2., along with the remaining Trust balance.

¶ 12 The Heirs argue, however, that inclusion of paragraph D (the "Disaster Clause") specifically contemplates a distribution to the Trustors' heirs. While this type of Disaster Clause is common in trust agreements, we do not believe that it shows these Trustors' intent to leave anything to their heirs in these circumstances.

¶ 13 The Disaster Clause specifically provides that "if all the Trustors' beneficiaries are *deceased,*" then distribution should be made to their heirs. (Emphasis added). That provision can be read two ways. First, the term "deceased" might apply only to natural persons, not charitable entities, rendering the Disaster Clause inapplicable by definition to the distribution in paragraph C.2. We instead read the term broadly, to include within the definition of "deceased"

charitable entities that become defunct. Here, the record contains evidence that both named charities are still in existence.

¶ 14 In view of the Trustors' failure to name any individuals as beneficiaries, their naming of two specific charitable organizations and an additional unidentified 501(c)(3) organization as the sole beneficiaries, and the language of the Disaster Clause limiting its application to the situation in which *all* beneficiaries are deceased, we cannot find that the Trustors intended to leave their residual Trust estate to their heirs. In the absence of clearly discernable intent, we must next determine whether Arizona law independently requires the failed bequest to be distributed to the Charities as the remaining residuary beneficiaries or to the Trustors' heirs under the laws of intestacy.

¶ 15 The Charities argue that under Arizona case law they are entitled to split the failed bequest as the residuary beneficiaries. This argument stems from the Arizona Supreme Court's ruling in *In re Estate of Jackson,* 106 Ariz. 82, 471 P.2d 278 (1970). In *Jackson,* the testator died with a will that left everything to her husband. *Id.* at 83, 471 P.2d at 279. In the event that her husband predeceased her, she directed her estate to be divided into two equal shares, with one share going to her husband's daughter and one share going to her brother. *Id.* The testator's husband predeceased her, as did her brother. *Id.* The court had to decide whether a lapsed portion of a residuary bequest passed to the surviving residuary beneficiary or passed through intestacy. *Id.*

¶ 16 The court noted that the majority rule passes the lapsed portion of the residuary to the testator's next of kin as intestate property. *Id.* One of the arguments that the *Jackson* court addressed (and rejected) was that a testator's intent to leave a specified portion to a residuary beneficiary who cannot receive the gift would be defeated by allowing the lapsed residue to pass to the surviv-

---

2. On July 1, 1996, Shriners Hospitals for Crippled Children changed its name to "Shriners Hospitals for Children." As the organization's mission remained unchanged, no one is arguing that this is not the proper organization to receive a distribution from the Trust as the Trustors intended.

3. Internal Revenue Code section 501(c)(3) (Supp. 2007) provides that corporations are exempt from taxation if organized for charitable purposes.

ing residuary beneficiary. *Id.* at 84, 471 P.2d at 278. In rejecting this argument, the court cited a number of cases that criticize the majority rule because " 'of the settled presumption that a testator does not mean to die intestate as to any portion of his estate, and also of his plain actual intent, shown in the appointment of the general residuary legatees, that his next of kin shall not participate in the distribution at all.' " *Id.* (quoting *In re Gray's Estate,* 147 Pa. 67, 23 A. 205, 206 (1892)). *Jackson* therefore stands for the proposition that the actual intent of the testator must be given effect, and the presumption against intestacy cannot be served by taking a lapsed legacy out of the residue for the benefit of those who would inherit in the absence of a will. *Id.* ("[I]t is probably more in accord with the testator's intent that a lapsed residuary bequest remain in the residue and pass to the surviving residuary legatees.").

¶ 17 This holding was later codified into A.R.S. § 14–2604. A.R.S. § 14–2604(B) (2005) ("Except as provided in § 14–2603,[4] if the residue is devised to two or more persons,[5] the share of a residuary devisee that fails for any reason passes to the other residuary devisee or to other residuary devisees in proportion to the interest of each in the remaining part of the residue."). A.R.S. § 14–2604 is generally known as one of the anti-lapse statutes.

¶ 18 Before addressing the application of *Jackson* to the present case, we find it appropriate to examine *In re Estate of Blacksill.* 124 Ariz. 130, 602 P.2d 511. In *Blacksill,* the testator drafted a will that divided his estate into four equal parts, "one of such equal parts" to his secretary, "one of such equal parts" to the children of his deceased sister, and "one of such equal parts" to the children of each of his deceased brothers. 124 Ariz. at 132, 602 P.2d at 513. All of the testator's siblings died before the creation of the will. *Id.* His sister left two surviving children and one brother left one surviving child. *Id.* The other brother never had children. *Id.* This court found the disposition to the chil-

dren of the childless brother latently ambiguous and was unable to determine what the testator meant by the provision at issue. *Id.* at 132–33, 602 P.2d at 513–14. Accordingly, the court determined that the bequest to the childless brother failed and that share of the estate passed by intestate succession. *Id.* at 133, 602 P.2d at 514.

■ ¶ 19 *Jackson* and *Blacksill* might seem in conflict. This tension, however, is easily remedied. *Jackson* deals with *lapsed* bequests while *Blacksill* deals with *void* bequests. We must therefore determine whether the Trustors' bequest to the 501(c)(3) organization was a lapsed bequest or a void bequest.

■ ¶ 20 A "lapse" is defined as "the failure of a testamentary gift, esp. when the beneficiary dies before the testator dies" and "to pass away or revert to someone else because conditions have not been fulfilled." Black's Law Dictionary 896 (8th ed.2004); *see also Carter v. Lewis,* 364 Ill. 434, 4 N.E.2d 853, 856 (1936) (noting that a lapsed devise is valid and operative when a will is made but fails afterward due to the occurrence of an event during the testator's lifetime). Lapsed bequests often occur when a named beneficiary dies after the making of a will but before distribution of the estate. *See, e.g., Jackson,* 106 Ariz. at 83, 471 P.2d at 279; *In re Estate of Bickert,* 447 Pa. 469, 290 A.2d 925, 926 (1972); 80 Am.Jur.2d Wills § 1423 (2008) (defining a lapse generally as the failure of a testamentary gift as a result of the death of a devisee during the testator's lifetime). But while the event contemplated for a lapse is normally the death of a beneficiary, it is not limited to that circumstance and can occur because a condition or some other event has or has not occurred after the making of a will. *See, e.g., Greil Memorial Hosp. v. First Alabama Bank of Montgomery,* 387 So.2d 778, 781 (Ala.1980) (finding a lapsed bequest where a charitable organization had reincorporated and abandoned its charitable purpose); *Carpenter v. Miller,* 71

---

**4.** Arizona Revised Statutes § 14–2603 provides for lapsed bequests of beneficiaries who are related to the testator, and therefore is not applicable here.

**5.** "Person" is defined as a person or an organization. A.R.S. § 14–1201(37) (Supp.2008).

Ark.App. 5, 26 S.W.3d 135, 138 (2000) (defining the term "lapse" broadly to mean any devise that fails or takes no effect).

¶ 21 A void bequest, however, is ineffective as of the date of the will. Examples include cases in which a bequest is prohibited by law, or a bequest is made to a named beneficiary who is already deceased or incapable of taking under a will at the time the will is made. *See Blacksill*, 124 Ariz. at 132–33, 602 P.2d at 513–14; *Carter*, 4 N.E.2d at 856.

¶ 22 The bequest at issue in this case was a valid bequest that lapsed because Annabel Zilles sold her art collection without leaving a Schedule C to the Trust. Although no 501(c)(3) organization was specifically named in the Trust, the entity was capable of identification at the time the Trust was created. This failed gift conforms to the definition of a lapsed gift, not a void gift.[6]

¶ 23 The Heirs argue that *Jackson* is inapposite. While we agree that this case is distinguishable at some level from *Jackson,* we reject the Heirs' argument and find the decision applicable to the facts here.

¶ 24 First, *Jackson* involved the interpretation of a residuary clause in a will. But the Heirs contend that the provisions in the Trust are not true residuary provisions. The Restatement defines a "residuary devise" as a "testamentary disposition of property of the testator's net probate estate not disposed by a specific, general, or demonstrative devise." Restatement (Third) of Property: Wills & Other Donative Transfers § 5.1(4) (1999). A "general devise" is a "testamentary disposition, usually of a specified amount of money or quantity of property, that is payable from the general assets of the estate." Restatement (Third) of Property: Wills & Other Donative Transfers § 5.1(2). Illustrating the distinction, the Restatement points out that a devise of "one-half of my estate" is a general devise, while a residuary devise is usually the last dispositive provision and "takes the form of devising all the rest, residue, and remainder of [the] estate." Restatement (Third) of Property: Wills & Other Donative Transfers § 5.1 cmts. c & e. A residuary devise can be divided among more than one person on a percentage basis. Restatement (Third) of Property: Wills & Other Donative Transfers § 5.1 cmt. e. Additionally, the Uniform Probate Code, from which our current statutes are generally derived, notes that a devise of "all my estate" or similar language constitutes a residuary devise for purposes of the anti-lapse statutes. Unif. Probate Code § 2–604 cmt. (Supp. 2008).

¶ 25 Article V of the Trust deals with the administration of the residual trust and provides for the "Distribution of Trust Balance," stating that "the Trustee shall hold, administer and distribute the *remaining balance* of the Residual Trust as follows. . . ." (Emphasis added). Therefore, although the language of the Trust is different from the language used in the will in *Jackson,* it is nonetheless a residuary clause.

¶ 26 The Heirs also argue that specific percentage distributions are to be made here, while *Jackson* provided that the two named beneficiaries would receive equal shares. We find this argument meritless. In essence, *Jackson* left the residue of the testator's estate to two beneficiaries in equal shares, each receiving fifty percent. Here, the Trustors divided the residue of the Trust into three shares, one ninety percent share and two five percent shares. Though the percentage distributions are not equal, we can discern no reason that the relative proportions set forth in a residuary devise should alter the applicable legal framework.[7]

¶ 27 The Heirs further contend that the Disaster Clause provides a catchall in the event the dispositive provisions of the Trust

---

6. Throughout their brief, the Heirs avoid the terms "lapsed bequest" and instead use "failed bequest." For purposes of Arizona law, there is no difference between "lapse" and "fail." This is made clear by one of our anti-lapse statutes, A.R.S. § 14–2604(B), which uses the following language: "the share of a residuary devisee that fails for any reason . . ."

7. We reject the notion urged by the Heirs at oral argument that 90% is so much greater than 5% that we should dispense with the remaining residuary beneficiaries as functionally *de minimis.*

fail, which shows the Trustors' intent under these circumstances. Later they acknowledge that the Disaster Clause "does not expressly address the circumstances which have arisen here because it presumes live beneficiaries rather than charitable ones." The Disaster Clause in fact does not address the circumstances here; however, if we were to apply it as written, the Charities would still be entitled to the balance of the Trust estate because they are surviving beneficiaries of the Trustors. *See supra* ¶¶ 13–15.

¶ 28 The main distinction between this case and *Jackson* is that *Jackson* dealt with a will and we are presented with a trust. As discussed previously, the holding in *Jackson* is codified in A.R.S. § 14–2604. *See supra* ¶ 18. The Heirs correctly argue that A.R.S. § 14–2604 applies only to wills. Arizona Revised Statutes § 14–2601 provides that "the rules of construction in this article control the construction of a *will.*" (Emphasis added). Thus, we cannot hold that A.R.S. § 14–2604 is applicable to trusts.

¶ 29 We nevertheless conclude that the holding in *Jackson* is applicable to the facts here. The Trust is operating like a will in that it is disposing of property on the death of the surviving Trustor. *See In re Estate and Trust of Pilafas,* 172 Ariz. 207, 211–12, 836 P.2d 420, 424–25 (App.1992) (declining to apply wholesale the statutory rules for wills to revocable trusts, but mentioning certain decisions applying the statutory rules of lapsed bequests to trusts because such provisions operate after the trustor's death); Restatement (Third) of Property: Wills & Other Donative Transfers § 5.5 cmt. p (noting that anti-lapse statutes apply by analogy to revocable trusts). Here, two residuary beneficiaries "survived" the surviving Trustor. Pursuant to the holding in *Jackson,* those beneficiaries, the Charities, are entitled to the balance of the Trust estate.

¶ 30 This holding is supported by the Restatement. When this court is not bound by previous decisions or legislative enactments, we generally follow the Restatement. *Pilafas,* 172 Ariz. at 210, 836 P.2d at 423 (citing *Barnette v. McNulty,* 21 Ariz.App. 127, 129–31, 516 P.2d 583, 585–87 (1973)).

¶ 31 The Restatement (Third) of Trusts provides, in pertinent part, that "[a] trust that is not testamentary is not subject to the formal requirements [of a will] or to procedures for the administration of a decedent's estate; nevertheless, a trust is ordinarily subject to ... rules of construction and other rules applicable to testamentary dispositions." Restatement (Third) of Trusts § 25(2) (2003). The Restatement further provides that certain statutes designed as protections or aids against oversight or inadequacies in the planning and drafting of wills often fail to specifically address revocable *inter vivos* trusts. Restatement (Third) of Trusts § 25 cmt. e(1). Although these statutes frequently fail to address revocable trusts, "the legislation should ordinarily be applied as if trust dispositive provisions that are to be carried out after the [trustor's] death had been made by will." *Id.*

¶ 32 We find the Heirs' reliance on Restatement (Third) of Trusts § 8 inapposite. Section 8 provides for a resulting trust in the trustor(s) or their successors in interest if the trust fails in whole or in part. Restatement (Third) of Trusts § 8. However, in arguing that this section calls for a resulting trust in this case, the Heirs overlook key limiting language. The section provides for such a resulting trust "unless ... the transferor manifested an intention that a resulting trust should not arise." Restatement (Third) of Trusts § 8(a). Here, we have determined that by the language of the Trust, the Trustors manifested an intention to leave their Trust estate to charitable organizations rather than to their heirs, who would take under a resulting trust. *See supra* ¶ 15.

¶ 33 We find the holding and reasoning applied in *Jackson* applicable to the case at hand. Accordingly, we hold that under the facts of this case, the Charities, as residuary beneficiaries of the Trust, are entitled to split the remaining ninety percent of the Trust estate according to the relative (here, equal) proportions of their express interests in the residuary.

## CONCLUSION

¶ 34 For the foregoing reasons, we hold that a lapsed gift of residuary trust assets

passes to the other residual beneficiaries identified in the trust, instead of to the trustors' heirs according to the law of intestacy. We reverse the order of the trial court and remand for proceedings consistent with this opinion.

CONCURRING: MAURICE PORTLEY, Presiding Judge, and JON W. THOMPSON, Judge.