NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

In the Matter of:

RALPH CREDILLE REVOCABLE TRUST DATED AUGUST 22, 2014

PAMALA TAYLOR, et al., *Petitioners/Appellees*,

*v.*

R. DOUGLAS CREDILLE, *Respondent/Appellant*.

No. 1 CA-CV 17-0690
FILED 9-27-2018

Appeal from the Superior Court in Mohave County
No. S8015PB201600131
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Bernard Justice Johnsen Law, PLLC, Chandler
By Bernard J. Johnsen
*Counsel for Petitioners/Appellees*

R. Douglas Credille, Littlefield
*Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Randall M. Howe joined.

---

**J O H N S E N**, Judge:

**¶1**        R. Douglas Credille ("Doug") appeals from the superior court's grant of summary judgment in favor of his siblings, Pamala Taylor ("Pamala") and Darrel Credille ("Darrel"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Doug, Pamala and Darrel are Ralph Credille's children. In 2014, Ralph created the Ralph Credille Revocable Trust (the "Trust") naming his three children as beneficiaries. The Trust names Ralph as the primary trustee, Doug as the successor trustee and Pamala as the alternate successor trustee. Article Two of the Trust sets forth a distribution plan upon Ralph's death that references the disposition of real property and a manufactured home thereon (the "Property") located in the community of Beaver Dam. In relevant part, Article Two states that "[t]he majority vote of my three (3) children shall control" whether the Property "shall be divided or disposed" and a majority vote will also determine how the Property "should be used if not divided or disposed."

**¶3**        Ralph passed away in 2015, and Doug assumed the role of trustee. At that time, Doug was living in the Property rent-free. Pamala and Darrel notified Doug they wanted to sell the Property. Doug, however, did not list the Property for sale.

**¶4**        Accordingly, Pamala and Darrel petitioned the superior court for a declaratory judgment that Doug was unwilling to act as trustee of the Trust and asked the court to appoint Pamala as the successor trustee. *See* Arizona Revised Statutes ("A.R.S.") section 12-1834 (2018) (authorizing declaratory relief to persons interested in the administration of a trust).[1] The petition alleged that, since Ralph's death, Doug had not distributed

---

[1]        Absent material revision after the relevant date, we cite the current version of a statute or rule.

Ralph's personal belongings, liquidated Ralph's brokerage account, funded a real property sub-trust, or listed the Property for sale.

**¶5** Doug answered and filed a counterclaim asserting that Pamala and Darrel's petition violated the Trust's no-contest provision. Doug also asked the court to modify the Trust, pursuant to A.R.S. § 14-10412 (2018), "to ensure that the Trust conforms to Decedent's intention that the [Property] be retained for so long as a member of his family needs a place to live, and rent-free." In turn, Pamala and Darrel amended their petition to assert that Doug's requested modification violated the Trust's no-contest provision. Doug answered the amended petition, counterclaiming again for similar relief, but this time seeking reformation of the Trust pursuant to A.R.S. § 14-10415 (2018).

**¶6** Pamala and Darrel then moved for summary judgment, which the superior court granted, over Doug's opposition. In its order, the court removed Doug as trustee and appointed Pamala as successor trustee. The court denied Doug's counterclaim to reform the Trust. In addition, the court determined that Doug had violated the Trust's no-contest provision and was no longer a Trust beneficiary.

**¶7** Doug timely appealed from the judgment. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. § 12-2101(A)(9) (2018).

## DISCUSSION

**¶8** Summary judgment shall be granted if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(A). We review a grant of summary judgment *de novo*, applying the same standard as the superior court. *See United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195 (App. 1990).

### A. The Trust's Property Provision.

**¶9** According to Doug, Ralph intended the Trust to retain the Property for "family use" for as long as a family member needed a rent-free place to live. When interpreting a trust, a court's role is to determine and give effect to the trustor's intent. *See In re Estate of Zilles*, 219 Ariz. 527, 530, ¶ 8 (App. 2008). If the trust is created by written instrument, that intent is ascertained from the express language of the instrument. *State ex rel. Goddard v. Coerver*, 100 Ariz. 135, 141 (1966). A court must not go beyond the language of the trust "in an attempt to give effect to what it conceives to have been" the trustor's "actual intent or motive." *Taylor v. Hutchinson*, 17

3

Ariz. App. 301, 304 (1972). Extrinsic evidence is not admissible to contradict the plain language of a trust. *See Zilles*, 219 Ariz. at 530, ¶ 9. We review the superior court's interpretation of a trust *de novo*. *See In re Indenture of Tr. Dated January 13, 1964*, 235 Ariz. 40, 44, ¶ 7 (App. 2014).

**¶10** In Article Two, titled "Plan of Distribution," the Trust identifies the assets of the trust, including the Property, and directs that, "[u]pon my death, my successor trustee(s) shall take charge of the assets then remaining in this trust and make distribution thereof according to the following plan of distribution." Subpart 5 of Article Two is titled "Disposition of All Real Property." It begins:

> I desire that all of my interest in any real property owned by this trust, including . . . [the Property] . . . **be retained** by the trustees as set forth below in a separate trust known as the REAL PROPERTY TRUST . . . **for the enjoyment and use of said [Property] by my family line, hopefully through future generations**, to be administered as hereinafter provided.

(Emphasis added.)

The Trust then directs Ralph's three children to vote to decide whether the Property shall be divided or disposed:

> Beginning upon my death, my three (3) children shall vote as to the ownership and management of the [Property]. . . . **The majority vote of my three (3) children shall control whether the [Property] shall be divided or disposed** and a majority vote shall also determine how the [Property] should be used if not divided or disposed.

(Emphasis added.)

**¶11** Contrary to Doug's assertion, neither the phrase directing the Property be "retained by the trustees as set forth below in a separate trust known as the Real Property Trust" nor the language expressing Ralph's desire that the Property be enjoyed "hopefully through future generations"

overrides the Trust's express directive that, upon Ralph's death, the majority vote of his three children "shall control" whether the Property is kept or sold.[2]

**¶12**  Alternatively, Doug argues that the Trust is ambiguous, and, therefore, the superior court should have considered extrinsic evidence of intent, specifically statements Ralph purportedly made to the effect that he intended family members to have the right to live in the Property rent-free. According to Doug, Ralph insisted, in the presence of two of his children, "that his lawyer make the Trust keep the house for use by needy family members."

**¶13**  In opposing summary judgment, Doug did not submit affidavits or other sworn testimony to establish Ralph's intent. *See* Ariz. R. Civ. P. 56(c)(5), (6). Instead, he relied on hearsay statements contained in his verified counterclaim. *See* Ariz. R. Evid. 801(c). Setting aside the evidentiary issues posed by Doug's opposition to summary judgment, as explained above, the express language of the Trust directs that the Property be placed in a sub-trust and that Ralph's three children determine, by majority vote, whether the Property will be kept or sold. We will not consider the statements Doug asserts Ralph made because those statements directly contradict express language in the Trust. *See Zilles*, 219 Ariz. at 530, ¶ 9.[3]

---

2  The phrase "I desire" generally is considered precatory language, defined as language that is "requesting, recommending, or expressing a desire rather than a command." *See* Black's Law Dictionary (10th ed. 2014); *see also In re Hayward's Estate,* 57 Ariz. 51, 60-61 (1941) (interpreting phrase "I wish" as precatory language that a testator's descendants may follow or not as they please). Doug's briefs do not address the relationship between precatory language and trust language that expresses a command; therefore, we do not address the issue further. *See* ARCAP 13(a)(7) (requiring the argument section of a brief to include "supporting reasons for each contention" and citations to relevant legal authorities); *see also Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491, n.2 (App. 2007) (declining to address an undeveloped argument).

3  Although Doug asserts that "[d]iscovery in our case was never even begun," he failed to move for relief under Rule 56(d). *See* Ariz. R. Civ. P. 56(d) (procedure by which a party responding to a motion for summary judgment can obtain evidence "essential to justify its opposition").

**B.      The No-Contest Provision.**

**¶14**      A no-contest clause contained in a trust is enforceable unless the party challenging the trust has probable cause to support the contest. *See In re Shaheen Trust*, 236 Ariz. 498, 501, ¶ 9 (App. 2015) (citing Restatement (Second) of Property: Donative Transfers ("Restatement") § 9.1 (1983)).  Probable cause means "the existence, at the time of the initiation of the proceeding, of evidence which would lead a reasonable person, properly informed and advised, to conclude that there is a substantial likelihood that the contest or attack will be successful." *In re Estate of Shumway*, 198 Ariz. 323, 327, ¶ 12 (2000) (quoting Restatement § 9.1 cmt. j).  A subjective belief is not sufficient; the belief must be "objectively reasonable." *Shaheen*, 236 Ariz. at 501, ¶ 12 (citation omitted).  We review *de novo* whether a trust's no-contest provision is enforceable. *See In re Estate of Stewart*, 230 Ariz. 480, 484, ¶ 13 (App. 2012).

**¶15**      Doug argues that Pamala and Darrel violated the Trust's no-contest provision.  He contends they "sued to get what they want — which is contrary to Decedent's intent and plain trust terms."  On summary judgment, the superior court rejected Doug's contention and entered judgment in favor of Pamala and Darrel on their claim that it was Doug who violated the no-contest clause by seeking modification and reformation of the Trust.

**¶16**      The Trust's no-contest provision states:

> [A]ny taker who . . . contests this trust shall forfeit all interest in any property, income or other benefit to him/her.  Any property, income or other benefit forfeited by the operation of this paragraph shall be distributed as part of the net proceeds of this living trust as if the taker asserting the claim did not survive.

**¶17**      We agree with the superior court that Pamala and Darrel did not violate the no-contest provision.  They petitioned the court for a declaration that Doug was unwilling to act as trustee and an order appointing Pamala as successor trustee.  In response to Doug's counterclaim, they amended their petition to request a finding that Doug violated the Trust's no-contest provision.  The record reflects that Doug, as trustee, made no efforts to place the Property in a sub-trust or to sell the Property as required by the Trust terms.  Accordingly, Pamala and Darrel had probable cause for their petition and did not violate the no-contest clause.

¶18     We also agree with the superior court that Doug's counterclaim violated the no-contest provision. Doug sought modification and reformation of the Trust based on his allegation that it was Ralph's "intention that the [Property] be retained for so long as a member of his family needs a place to live, and rent-free." The counterclaim directly contested the terms of the Trust, which require a sale of the Property if a majority of the children so vote. The Trust is in writing, signed by Ralph, and notarized.

¶19     Doug presented no evidence that would lead a reasonable person, properly informed and advised, to conclude there was a substantial likelihood that his proposed Trust modification or reformation would be successful. *See Shumway*, 198 Ariz. at 327, ¶ 12. Accordingly, Doug did not have probable cause to challenge the Trust, and the superior court properly enforced the no-contest provision against him.

## CONCLUSION

¶20     For the foregoing reasons, we affirm the superior court's judgment. We award costs to Pamala and Darrel upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA