NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In the Matter of:

OAKLAND LIVING TRUST

CATHERINE S. FELLERS, et al., *Plaintiffs/Appellants*,

*v.*

JAMES E. BAILEY, et al., *Defendants/Appellees*.

No. 1 CA-CV 19-0759

FILED 03-30-2021

Appeal from the Superior Court in Maricopa County
No. PB2014-000972
The Honorable Jay M. Polk, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

Kadish & Anthony Law Group, Phoenix
By Stephen J. Anthony
*Co-Counsel for Plaintiffs/Appellants*

Margaret Frank Schweitzer Law, PLLC, Scottsdale
By Margaret Schweitzer
*Co-Counsel for Plaintiffs/Appellants*

Thorpe Shwer, P.C., Phoenix
By André H. Merrett
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

---

**C R U Z**, Judge:

**¶1**        Trust beneficiaries Catherine S. Fellers and Gary Bailey appeal from the superior court's ruling granting summary judgment in favor of trust beneficiary Victoria Norris and trustee-beneficiary James E. Bailey, denying their own cross-motion for summary judgment, and dismissing Catherine and Gary's amended forfeiture petition.[1]   For the reasons that follow, we affirm the court's ruling denying Catherine and Gary's cross-motion for summary judgment, reverse its ruling granting summary judgment in favor of Victoria and James, and remand for further proceedings consistent with this decision.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        The parties' mother, Patricia Oakland, created the Oakland Living Trust (the "Trust") before her death.  The Trust named the four siblings as beneficiaries, each entitled to a 25% share on Patricia's death, and named James as successor trustee.  After Patricia died in November 2011, "[t]he siblings' relationship soured" over suspicions and disagreements regarding Trust assets. *Matter of Oakland Living Trust*, 1 CA-CV 16-0073, 2017 WL 2544836, at *1, ¶¶ 3-5, 7 (Ariz. App. June 13, 2017) (mem. decision).  The siblings split into factions, with Catherine and Gary on one side, and James and Victoria on the other.

**¶3**        The Trust assets included, *inter alia*, several life insurance policies, two individual retirement accounts (Wadell & Reed IRA and Protective Life IRA), a money market account (Wadell & Reed), and Patricia's house in Phoenix.  Shortly after Patricia's death, Wadell & Reed direct deposited a distribution of $2201.00 into a Bank of America account Victoria and Patricia had jointly owned, and Victoria deposited into the

---

[1]        To avoid confusion, we refer to the beneficiaries by their first names.

Bank of America account a check for $1191.79 that Wadell & Reed issued to Patricia several days before her death.  Victoria never turned these amounts over to the Trust.  She maintained that she had been preoccupied with Patricia's illness and death at the time she deposited the Waddell & Reed check, and had been unaware of the Waddell & Reed direct deposit until litigation concerning the Trust commenced.

**¶4**　　　The Trust leased the house to a tenant for approximately one year.  In mid-2013, James and Victoria borrowed against that property to purchase the same in the names of James, Victoria, and Victoria's husband.  James and Victoria received their respective shares of the real property as an in-kind distribution, and they paid one-half of the purchase price to the Trust to represent Catherine's and Gary's respective shares of the purchase from the Trust.  Catherine and Gary, however, did not have notice of the transfer until after it had been completed, and the Trust did not distribute any proceeds to Catherine or Gary.  *See Matter of Oakland Living Trust*, 1 CA-CV 16-0073, at *2, ¶ 10.  No special co-trustee was appointed to take over as trustee for purposes of this transaction or to resolve any of the other disputes the siblings had concerning property, as provided by the Trust.

**¶5**　　　The Trust assets did not include Patricia's Fidelity & Guaranty Life Annuity ("FGL") account.  Instead, the four siblings were named as equal beneficiaries of that account.  However, James submitted a claim seeking the FGL funds for the Trust.  FGL refused to release the funds to the Trust and eventually distributed them to the four siblings.  James claimed to have been mistaken about believing the FGL account was a Trust asset.

**¶6**　　　Approximately 2.5 years after Patricia's death, Catherine and Gary petitioned to remove James as trustee, alleging he had failed to properly account for all Trust assets, had improperly purchased real property from the Trust, and other breaches of fiduciary duties.  The superior court denied the removal petition, and this court affirmed.  *See Matter of Oakland Living Trust*, 1 CA-CV 16-0073, at *6, ¶ 34.

**¶7**　　　As the appeal of the removal petition decision was pending, James petitioned for Catherine's and Gary's beneficiary interests to be forfeited under the Trust's no-contest clause, citing their efforts to remove him as Trustee.  The superior court determined Catherine and Gary had probable cause to pursue James' removal as Trustee and denied the petition.

3

¶8            Meanwhile, Gary petitioned for James' and Victoria's beneficiary interests to be forfeited under the Trust's no-contest clause; Catherine later joined as a co-petitioner. Trial was set to commence on January 28, 2019, but on that date the superior court asked the parties to file motions for summary judgment on Catherine and Gary's forfeiture petition and they agreed to do so. The superior court held oral argument on the motions and then granted James' and Victoria's motion for summary judgment and denied Catherine's and Gary's cross-motion for summary judgment. Catherine and Gary timely appealed the order, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶9            Summary judgment is proper only when "the moving party shows that there is no genuine dispute as to any material fact and . . . is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). A motion for summary judgment should be granted "if the facts produced in support of the [opposing party's claims] have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 13 (2003) (internal quotation marks and citation omitted). We view the evidence in the light most favorable to the parties against whom judgment was entered and review de novo whether genuine issues of material fact exist and whether the superior court appropriately applied the law. *Awsienko v. Cohen*, 227 Ariz. 256, 258, ¶ 7 (App. 2011). "We review a denial of a motion for summary judgment for an abuse of discretion and view the facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Sonoran Desert Investigations, Inc. v. Miller*, 213 Ariz. 274, 276, ¶ 5 (App. 2006).

¶10           Our goal in interpreting a trust provision is to "ascertain the intent of the trustor." *In re Estate of Zilles*, 219 Ariz. 527, 530, ¶ 8 (App. 2008). "To ascertain the intent of a trustor, we consider the text of the trust as a whole and, when appropriate, the circumstances at the time it was executed." *Id.* (internal quotation marks and citation omitted). Here, the Trust's no-contest clause read in pertinent part:

> [I]f any devisee, legatee, or beneficiary under my Trust . . . or
> any of my legal heirs . . . does any of the following, then in
> that event I specifically disinherit such person or persons, and

4

all such legacies, bequests, devises and interests given to such person or persons under my Trust . . . shall be forfeited:

. . . .

f.    Attacks or seeks to impair or invalidate . . . any designation of beneficiaries[2] for any insurance policy on my life or any designation of beneficiaries for any pension plan, Keogh, SEP, or IRA;

g.    In any other manner contests my Trust Agreement . . . or in any other manner, attacks or seeks to impair or invalidate any of my Trust's provisions;

h.    Conspires with or voluntarily assists anyone attempting to do any of the above acts.

The Trust further provided for the appointment of a special co-trustee "to protect the financial resources controlled and governed by [the] Trust and the interests of the beneficiaries."  The Trust authorized the special co-trustee to perform certain functions when "the discretionary authority of my Trustee to perform a function might constitute an act of self-dealing or might jeopardize the tax status of [the] Trust," including:

**1.  Valuation**

The value of certain property of my Trust may not be readily ascertainable, for example, real estate and securities . . . . Whenever my Trustee's right to determine the value of this kind of property may be self-serving or may produce a possible conflict of interest or adverse taxation issues, the Special Co-Trustee is to value the property of my Trust.

. . . .

---

2    The Trust defines "[b]eneficiary [d]esignation" as "any document executed by me that affects the manner of payment of amounts held in a plan (of whatever type) subject to the distribution rules of [26 U.S.C. § 401], or any commercial annuity or any similar deferred payment arrangement, or life insurance contract."

### 4. Discretionary Distributions of Trust Income and Principal

To the extent my Trustee has the discretionary authority to make distributions of income or principal to or among beneficiaries or to retain all or any part of the income, and to the extent this discretionary authority may result in, or appear to be, a conflict of interest or an opportunity for self-dealing or may produce adverse tax consequences, the Special Co-Trustee is to make all decisions with regard to the discretionary distributions of income and principal and the retention of income.

In addition, a special co-trustee was authorized to resolve disputes:

### h. Resolution of Disputes

The Special Co-Trustee may unilaterally resolve any dispute, claim or conflict between beneficiaries, including those who have, or claim to have, a present or future interest in property, between a beneficiary and a trustee, or between trustees. Such resolution shall be binding on all parties to my Trust and shall not be subject to review.

¶11 On appeal, Catherine and Gary contend that the superior court erred in finding that a trustee-beneficiary's actions are not subject to the no-contest clause of the Trust. By its express terms, the no-contest clause applies to "any devisee, legatee, or beneficiary under [the] Trust . . . or any of [Patricia's] legal heirs." James and Victoria argue that James, as the trustee of the Trust, is not included among those individuals. Here, however, James was both a trustee and a beneficiary of the Trust, and the Trust did not provide a trustee-beneficiary exception. James and Victoria fail to cite any relevant legal authority which supports such an exception. *But see Matter of W.N. Connell and Marjorie T. Connell Living Trust*, 426 P.3d 599, 602 (Nev. 2018) (recognizing "there may be instances wherein a no-contest clause applies to trustee-beneficiaries who abuse their trustee status 'as a means of presenting personal views' as a beneficiary") (quoting Restatement (Third) of Property: Wills & Donative Transfers § 8.5 cmt. f (2003)); *Johnson v. Greenelsh*, 217 P.3d 1194, 1202 (Cal. 2009) ("[A] trustee who is also a beneficiary might violate a no contest clause by taking action to reverse a settlor's exercise of rights conferred by the trust, if the action would effectively nullify or alter the estate plan set out in the trust."). We

find the superior court erred by determining that the no-contest clause did not apply to James' actions because he was a trustee-beneficiary.

¶12            In addition, the superior court erred by granting summary judgment to James and Victoria because genuine issues of material fact existed as to whether James (1) sought to impair the Trust provision requiring equal distribution of the Trust assets when he sold Patricia's house to himself, Victoria, and Victoria's husband (a transaction we found "clearly constituted self-dealing" in our previous decision) and failed to distribute any of the proceeds to Catherine and Gary, and (2) whether he should have appointed a special co-trustee before doing so. Genuine issues of material fact also exist as to whether James sought to impair or invalidate the Trust by failing to distribute Trust assets to Catherine and Gary and whether he sought to impair or invalidate a designation of beneficiaries by pursuing the FGL funds for the Trust when the four siblings were the beneficiaries of FGL. Further, genuine issues of material fact exist as to whether Victoria sought to impair or invalidate a designation of beneficiaries by failing to turn over the Waddell & Reed funds to the Trust.

¶13            Finally, because genuine issues of material fact exist for trial, the superior court did not abuse its discretion by denying Catherine and Gary's cross-motion for summary judgment.

¶14            Catherine and Gary request their attorneys' fees on appeal pursuant to A.R.S. § 12-341.01(A), which provides that a court may award the successful party in a contested action arising out of contract reasonable attorneys' fees. Because this dispute did not arise out of contract, we deny Catherine and Gary's request for attorneys' fees on appeal. *See Owner-Operator Indep. Drivers Ass'n v. Pac. Fin. Ass'n*, 241 Ariz. 406, 416, ¶ 39 (App. 2017) ("[S]uits that arise out of a trust relationship are not suits arising out of a contract for purposes of A.R.S. § 12-341.01(A).") (quoting *In re Naarden Trust*, 195 Ariz. 526, 530, ¶ 18 (App. 1999)).

## CONCLUSION

¶15 For the foregoing reasons, we reverse the superior court's order granting summary judgment in favor of James and Victoria, affirm the court's order denying Catherine and Gary's cross-motion for summary judgment, and remand for further proceedings consistent with this decision.

