IN THE

# ARIZONA COURT OF APPEALS
## DIVISION TWO

---

IN RE INDENTURE OF TRUST DATED JANUARY 13, 1964.

MILTON J. WEINSTEIN,
*Petitioner/Appellant/Cross-Appellee,*

*v.*

STEVEN WEINSTEIN AND CARRIE LEE ROSEN,
*Respondents/Appellees/Cross-Appellants.*

No. 2 CA-CV 2013-0117
Filed May 16, 2014

---

Appeal from the Superior Court in Pima County
No. PB20120951
The Honorable Jan E. Kearney, Judge
The Honorable Leslie Miller, Judge

**AFFIRMED**

---

COUNSEL

Munger Chadwick, P.L.C., Tucson
By Mark E. Chadwick
*Counsel for Petitioner/Appellant/Cross-Appellee*

Lawrence E. Condit, Tucson
*Counsel for Respondents/Appellees/Cross-Appellants*

---

**OPINION**

Chief Judge Howard authored the opinion of the Court, in which Presiding Judge Vásquez and Judge Miller concurred.

_____

H O W A R D, Chief Judge:

¶1		Milton Weinstein appeals from the trial court's grant of summary judgment in favor of Steven Weinstein and Carrie Rosen (the "Weinsteins"), interested persons as trustee and beneficiary respectively, of an inter vivos trust their grandparents established in 1964 (the "Trust"), on the basis that he lacked standing to file a petition for an accounting of the Trust. Milton argues the court erred in finding he lacked standing because the agreement purporting to assign his entire beneficial interest in the Trust was invalid, and, alternatively, he re-inherited an interest in the Trust through his father's will. Milton also argues the court abused its discretion in awarding the Weinsteins their attorney fees. The Weinsteins cross-appeal, arguing the court erred in awarding less than the full amount of fees they had requested. Because we find that Milton lacked standing, and the trial court did not abuse its discretion in determining the attorney fee award, we affirm.

## Factual and Procedural Background

¶2		On appeal from a grant of summary judgment, we view the facts in the light most favorable to the opposing party. *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, ¶ 14, 292 P.3d 195, 199 (App. 2012). In 1964, Harry and Alice Weinstein created an inter vivos trust, and named their three grandchildren, Steven, Carrie, and Milton Weinstein, as the beneficiaries. Bernard Weinstein, father of Steven, Carrie, and Milton, was named trustee. The Trust contained a spendthrift provision prohibiting the voluntary and involuntary transfer of a beneficiary's interest. Pursuant to several amendments over the years, the Trust was modified to terminate upon Bernard's death.

¶3		In 2000, Milton executed an assignment, purporting to assign his entire interest in the Trust to his siblings, Steven and Carrie, to be held in trust for the benefit of Steven and Carrie's children. In return for the assignment, the trustee paid Milton $75,000 from the Trust, which was distributed over three years. Bernard passed away in May 2010.

¶4          In September 2012, Milton brought a petition for accounting against the Trust and requested the court freeze all Trust assets and grant him a surcharge.  The Weinsteins objected to the petition and then filed a motion for summary judgment.  The Weinsteins argued that Milton had no standing to file the petition for accounting because he was no longer a beneficiary of the Trust following the assignment in 2000, and that laches and the statute of limitations barred any claims attempting to invalidate the assignment.  The trial court granted the Weinsteins' motion, finding that the assignment was valid, that Milton did not re-inherit an interest in the Trust through Bernard's will, and that even if the assignment was invalid, laches and the statute of limitations prohibited Milton's claims.  The court also awarded the Weinsteins a portion of their attorney fees pursuant to A.R.S. § 14-11004(B).  We have jurisdiction over Milton's appeal and the Weinsteins' cross-appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(9).

## Summary Judgment

¶5          Milton argues the trial court erred in concluding that he had assigned any interest he had in the Trust in 2000 and therefore lacked standing to bring a petition for accounting against the Trust.  Whether a party has standing is an issue of law we review de novo.  *In re Estate of Stewart*, 230 Ariz. 480, ¶ 8, 286 P.3d 1089, 1092 (App. 2012).  The Arizona Trust Code specifies that a court may intervene in the administration of a trust only when an action is brought by an "interested person."  A.R.S. § 14-10201(A).  An "interested person" in Title 14 proceedings is defined, as relevant here, as any "beneficiary . . . [or] other person who has a property right in or claim against a trust estate."  A.R.S. § 14-1201(28).

¶6          Milton first argues the assignment of his interest was invalid, thus maintaining his status as a beneficiary of the Trust, because the Trust's spendthrift provision prohibited the assignment.  To determine whether Milton has standing to petition for an accounting, we therefore must first examine the language of the Trust and determine whether Milton effectively assigned any interest he had in the Trust, or whether he remained a beneficiary despite the purported assignment.

¶7	We review the interpretation of a written instrument de novo. *See Squaw Peak Cmty. Covenant Church of Phx. v. Anozira Dev., Inc.*, 149 Ariz. 409, 412, 719 P.2d 295, 298 (App. 1986). When interpreting a trust, the overriding goal is to ascertain the intent of the trustor. *In re Estate of Zilles*, 219 Ariz. 527, ¶ 8, 200 P.3d 1024, 1027 (App. 2008). That intent "'is to be ascertained from the contents within the four corners of the instrument, including the general plan or scheme thereof, and when necessary or appropriate, the circumstances under which the [instrument] was made.'" *Id.*, *quoting In re Estate of Gardiner*, 5 Ariz. App. 239, 240-41, 425 P.2d 427, 428-29 (1967) (second alteration in *Estate of Zilles*).

¶8	In Arizona, a spendthrift provision in a trust "is valid only if it restrains either voluntary or involuntary transfer of a beneficiary's interest."[1] A.R.S. § 14-10502(A). No specific language is necessary to create a spendthrift trust, so long as its terms manifest an intention to create such a trust. § 14-10502(B); Restatement (Second) of Trusts § 152 cmt. c (1959) (hereinafter "Restatement").[2] "'The purpose of a spendthrift trust is to protect

---

[1] The Restatement suggests that a spendthrift provision restraining either the voluntary or involuntary transfer of the beneficiary's interest, but not both, is invalid. Restatement (Second) of Trusts § 152(1) (1959). This concept was further expanded in the Restatement (Third) of Trusts, which states that "[f]or reasons of policy, a spendthrift restraint that seeks only to prevent creditors from reaching the beneficiary's interests, while allowing the beneficiary to transfer the interest, is invalid." Restatement (Third) of Trusts § 58 cmt. b(2) (2003). And "a restraint only on voluntary transfer does not protect the interests from creditors and is thus insufficiently effective as a practical matter to justify a departure from the law's general policy against restraints on alienation." *Id.* But we are not faced with that situation here because this spendthrift provision prohibits both.

[2] Section 14-10106, A.R.S., states that "[t]he court shall look to the restatement (second) of trusts for interpretation of the common law and not to subsequent restatements of trusts to determine . . . [a]nd effectuate the [trustor's] intent." Because issues related to

the beneficiary from himself and his creditors.'" *Birdsell v. Coumbe (In re Coumbe)*, 304 B.R. 378, 382 (B.A.P. 9th Cir. 2003), *quoting Richardson v. McCullough (In re McCullough)*, 259 B.R. 509, 517 (Bankr. D.R.I. 2001); *see also* George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 222 (rev. 2d ed. 1980) (spendthrift provisions protect against creditors and "incompetence, imprudence, or misfortune" of beneficiaries). And although a trustee may choose to honor an assignment made in violation of a spendthrift clause, the beneficiary retains the ability to cease all future payments that would be made pursuant to that assignment because "[a] valid spendthrift provision makes it impossible for a beneficiary to make a legally binding transfer." Unif. Trust Code § 502 cmt. (2000);[3] Restatement § 152 cmt. i.

**¶9**        Here, section 2(i) of the Trust restricts the beneficiaries' ability to assign their interest and is the portion Milton contends is a spendthrift provision that prohibited the assignment of his beneficial interest. A portion of section 2 provides that a beneficiary's interest "shall [not] . . . be liable for the obligations or debts of said beneficiary . . . and shall not be . . . taken on execution, breached by creditor's bill, garnishment, or other process or writ by any person having . . . a claim against said beneficiary." This clause clearly prohibits the involuntary transfer of a beneficiary's interest to satisfy the beneficiary's creditors.

---

spendthrift trusts necessarily implicate the intent of the trustor, we rely on the Restatement (Second) of Trusts, and not the more recent Restatement (Third) of Trusts. The parties do not address and we do not decide the validity of § 14-10106 because reliance on the Restatement (Third) of Trusts would not have changed the result of this case.

[3]The Arizona Trust Code was derived from the Uniform Trust Code, and § 14-10502 is similar to Unif. Trust Code § 502. *See* 2008 Ariz. Sess. Laws, ch. 247, § 16. When a statute is based upon a uniform or model act, we assume the legislature intended to adopt the interpretation of the statute placed on it by the drafters of the model act when the language is the same. *State v. Sanchez*, 174 Ariz. 44, 47, 846 P.2d 857, 860 (App. 1993).

¶10        The provision also states that the beneficiary's interest "shall not be assignable in any manner," and that "no part [of the beneficiary's interest] shall be anticipated, pledged, encumbered, hypothecated, or in any way disposed of by said beneficiary."  This clause thus prohibits voluntary transfers by the beneficiary of his interest in any way.  The provision lastly provides that "[a]ll payments provided in the trust for said beneficiary shall be paid directly to him or her . . . and to no other person or entity."  This supports the overall reading of this provision to provide a blanket prohibition on any assignment of the beneficiary's interest to another party or entity.  *See Estate of Zilles*, 219 Ariz. 527, ¶ 8, 200 P.3d at 1027.  The provision at issue therefore clearly manifests an intent to restrain both voluntary and involuntary assignments and is thus a valid spendthrift clause that prohibited any assignment of Milton's beneficial interest in the Trust. [4]  *See* § 14-10502(A); Restatement § 152 cmt. c.  The trial court erred in concluding otherwise.

¶11        The Weinsteins, however, argue that the broad discretionary powers granted to the trustee and the placement of the spendthrift provision within the section delineating those powers clearly show the provision was intended to prohibit assignments only to third party creditors and not co-beneficiaries.  Section 2, in addition to containing the spendthrift provision, also details the trustee's powers in distributing Trust property.  Section 2(a) states "the Trustee shall have full power and authority to manage and control said property . . . as though he were the absolute and unqualified owner of it."  Section 2(i) allows the Trustee, "in his discretion, . . . to transfer absolutely to any or all of said beneficiaries, . . . any portion not exceeding one half of the trust property or proceeds."

¶12        The terms of the Trust do not support the Weinsteins' interpretation.  Although the trustee was given broad powers to

---

[4]Because we conclude that the assignment was invalid under the terms of the Trust, we need not address Milton's additional claim that the assignment is invalid because it was procured under duress.

distribute and manage Trust property in any manner he saw fit, nothing in this section allows the trustee to affect the beneficiary's ownership interest in whatever property is in the Trust at any given time. Transferring up to one-half of the Trust property to a beneficiary would not extinguish that or any other beneficiary's interest in the Trust. Regardless of any property management or distributions by the trustee, the beneficiary's interest in the Trust is owned by that beneficiary and, under the express terms of the Trust, is not subject to alienation by the beneficiary or anyone else, including the trustee. *See* Restatement § 152 cmt. i.

**¶13** Additionally, the fact that the assignment here arguably went to co-beneficiaries and not a third party creditor does not affect the spendthrift clause's prohibition on any voluntary assignment of a beneficiary's interest. The Weinsteins have not cited any authority, nor have we found any, that states a beneficiary's assignment of his interest, in violation of a spendthrift clause, becomes valid if the assignment is to co-beneficiaries rather than a third party. And such a rule would undermine the spendthrift clause's goal of "'protect[ing] the beneficiary from himself'" and would consequently frustrate the trustor's intent. *Coumbe*, 304 B.R. at 382, *quoting Richardson*, 259 B.R. at 517; *see also Estate of Zilles*, 219 Ariz. 527, ¶ 8, 200 P.3d at 1027. Moreover, Milton's interest was not assigned to his co-beneficiaries, but rather to a trust for the benefit of Carrie's and Steven's children, who are not direct beneficiaries of the Trust. The Weinsteins' argument that the assignment was valid under the terms of the Trust therefore fails.

**¶14** But the Weinsteins argue that, even if the assignment was invalid, the trial court correctly concluded that Milton has since ratified the assignment by accepting the $75,000 he received in consideration. We determine de novo whether any genuine issues of material fact precluded summary judgment and whether the trial court correctly applied the law. *See Dayka & Hackett, LLC v. Del Monte Fresh Produce N.A.*, 228 Ariz. 533, ¶ 6, 269 P.3d 709, 711-12 (App. 2012).

**¶15** Under the current Arizona Trust Code, "[a] trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the conduct constituting the breach, released the

trustee from liability for the breach or ratified the transaction constituting the breach." A.R.S. § 14-11009.[5] But an unauthorized act of a trustee may be consented to or ratified only if, "[a]t the time of the consent, release or ratification, the beneficiary [knew] of the beneficiary's rights [and] of the material facts relating to the breach." § 14-11009(2); Unif. Trust Code § 1009 cmt. ("To constitute a valid consent, the beneficiary must know of the beneficiary's rights and of the material facts relating to the breach."); *see also Garrett v. Reid-Cashion Land & Cattle Co.*, 34 Ariz. 245, 269, 270 P. 1044, 1052 (1928) (beneficiary may ratify breach of trust only if beneficiary has "full knowledge" of act and its effects); Restatement § 216 cmt. k; Bogert & Bogert, *supra*, § 564. The requirement of full disclosure is an extension of the trustee's duty of loyalty, which includes the duty to deal fairly with the beneficiary and make complete disclosures. Bogert & Bogert, *supra*, §§ 544, 564; *see also* Restatement §§ 216 cmt. k, 170(2). Consequently, even if a beneficiary has the required knowledge, the ratification will not be valid if it was "induced by improper conduct of the trustee." § 14-11009(1).

¶16 In order for a trustee to later rely on a beneficiary's consent or ratification of an unauthorized act, the trustee has the burden of showing the beneficiary knew of his "rights [and] of the material facts relating to the breach." § 14-11009(2); *see also* Restatement § 216 cmt. k. The fact that a beneficiary had the required knowledge must be proven and will not be assumed. *Garrett*, 34 Ariz. at 269, 270 P. at 1052. And mere silence is not enough; a beneficiary must act affirmatively to consent to or ratify a trustee's actions. Unif. Trust Code § 1009 cmt.; Restatement § 216 cmt. a. Thus, "[t]he maxim, '[ignorance of the law excuses no one],' cannot be invoked in such a case." *Garrett*, 34 Ariz. at 269, 270 P. at 1052.

¶17 In the context of a spendthrift trust, the consent of the beneficiary "should be invalid if [it] directly or indirectly result[s] in an alienation of that beneficiary's interest or make[s] it liable to his debts." Bogert & Bogert, *supra*, §§ 941, 942 (principles controlling

---

[5] Neither party challenges the applicability of A.R.S. § 14-11009.

consent by beneficiaries apply equally to ratification); *see also* Restatement § 216 cmt. e (spendthrift beneficiary's consent to unauthorized act does not alter principle that the "interest of the beneficiary is not transferable by him or subject to the claims of his creditor"); *In re Wentworth*, 129 N.E. 646, 648 (N.Y. 1920) (beneficiary of statutory spendthrift trust cannot consent to alienation by trustee that would destroy trust). Any rule to the contrary would allow the beneficiary to avoid the spendthrift provision and would be "directly in the teeth of the clearly indicated wishes of the [trustor]." *Cowan v. Hamilton Nat'l Bank*, 146 S.W.2d 359, 368 (Tenn. 1941). The spendthrift beneficiary simply does not have the power "to thwart the purpose of the [provision]." *Id.* Accordingly, because Milton could not have consented to or ratified the alienation of his beneficial interest in the Trust, the trial court erred in concluding otherwise.

¶18 Nevertheless, in many cases it would be unjust to hold the trustee liable for payments actually made even though the payments were made in contravention of a spendthrift provision. Although the assignment may be invalid prospectively, the trustee would not be liable for any distributions made pursuant to the purported assignment before the beneficiary invokes the spendthrift clause. *See* Unif. Trust Code § 502 cmt.; Restatement § 152 cmt. i. The unauthorized assignment effectively acts as "a revocable order to the trustee to pay" the assignee whatever distributions the beneficiary is entitled to receive. Restatement § 152 cmt. i. Thus, "the trustee is under no liability to the beneficiary" for making a payment to a purported assignee in accordance with a beneficiary's unrevoked assignment. *Id.* Additionally, if the assignment was made for value, but the beneficiary later revokes the trustee's authority to make the purported distributions, the beneficiary is personally liable to the assignee. Restatement § 152 cmt. k.

¶19 At oral argument, Milton contended the trustee committed a breach of trust by failing to provide him a copy of the Trust and an accounting both before and after the assignment was effectuated. However, the same rationale that protects a trustee from liability for making distributions based on a purported assignment by a spendthrift beneficiary also protects the trustee

under these circumstances. Just as the trustee is shielded from liability for making payments based on an unrevoked assignment, he also is shielded for failing to provide an accounting or other trust documents when the beneficiary has purported to repudiate all interest in the trust. *See* Restatement § 152 cmt. i. Moreover, at the time the assignment was executed, beneficiaries were entitled to the terms of the trust and an accounting only "[u]pon reasonable request." 1973 Ariz. Sess. Laws, ch. 75, § 4 (enacting A.R.S. § 14-7303). Because Milton does not contend he ever requested a copy of the Trust or an accounting, this argument is without merit.

¶20 The Trust here, by its terms, terminated upon Bernard's death in 2010, and at oral argument both parties conceded the Trust property had been distributed. However, the record is unclear on when exactly the distribution occurred. If the distribution of any part of Milton's beneficial interest in the Trust occurred prior to Milton's "revocation" of the assignment, then the distribution was valid and the trustee would not be liable. *See* Unif. Trust Code § 502; Restatement § 152 cmt. i. Conversely, if the distribution of any part of Milton's interest had not yet occurred when he invoked the spendthrift provision, that portion of the distribution was not valid. *See* Restatement § 152 cmt. i. However, the record does not indicate when Milton's beneficial interest in the Trust was distributed when compared to Milton's revocation of his assignment, and we therefore cannot determine whether the trustee would be protected on this basis. Accordingly, we cannot uphold summary judgment on this basis.

¶21 The Weinsteins further argue that we may nonetheless affirm the trial court's grant of summary judgment because the court correctly concluded the doctrine of laches bars any claims purporting to set aside the assignment. We review a trial court's ruling on laches for an abuse of discretion. *Rash v. Town of Mammoth*, 233 Ariz. 577, ¶ 17, 315 P.3d 1234, 1240 (App. 2013). "The court abuses its discretion if no substantial evidence in the record supports the court's conclusion." *Id.* Additionally, although we review the court's legal conclusions de novo, we defer to its "factual findings unless clearly erroneous." *Id.*

**¶22** A beneficiary may be prevented from challenging an act made in violation of the terms of the trust by the doctrine of laches. Restatement § 219; Bogert & Bogert, *supra*, §§ 564, 948; *Tierra Ranchos Homeowners Ass'n v. Kitchukov,* 216 Ariz. 195, ¶ 24, 165 P.3d 173, 179 (App. 2007) (Arizona courts follow Restatement in absence of governing law to contrary). Laches is the "equitable counterpart to the statute of limitations, designed to discourage dilatory conduct." *Sotomayor v. Burns*, 199 Ariz. 81, ¶ 6, 13 P.3d 1198, 1200 (2000). "Laches will generally bar a claim when the delay is unreasonable and results in prejudice to the opposing party" even where the applicable statute of limitations has not yet expired. *Id.*; *see also Highland Vill. Partners, L.L.C. v. Bradbury & Stamm Constr. Co.*, 219 Ariz. 147, ¶ 16, 195 P.3d 184, 188 (App. 2008) (parties "protected against any prejudicial delay in bringing a claim within the statute of limitations by the doctrine of laches.").

**¶23** To determine whether the delay was unreasonable, courts must "examine the justification for delay, including the extent of plaintiff's advance knowledge of the basis for challenge." *Harris v. Purcell*, 193 Ariz. 409, ¶ 16, 973 P.2d 1166, 1169 (1998). A beneficiary who immediately files an action after his interest is repudiated, for example, is not barred by laches. *See Gabitzsch v. Cole*, 95 Ariz. 15, 19-20, 386 P.2d 23, 26 (1963). But where "the trustee has repudiated the trust to the knowledge of the beneficiary and the beneficiary fails to bring suit, he may be barred by laches." Restatement § 219 cmt. g. The unreasonable delay "must also result in prejudice, either to the opposing party or to the administration of justice, which may be demonstrated by showing injury or a change in position as a result of the delay." *League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, ¶ 6, 201 P.3d 517, 519 (2009) (citation omitted).

**¶24** Milton's petition for an accounting came twelve years after his purported assignment, and more than two years after the death of the trustee, Bernard. He argues this delay was not unreasonable because he was unaware his assignment was prohibited, he never was provided with an accounting to determine whether the $75,000 was fair consideration, and Bernard coerced him into signing the document. Although Milton may not have been aware the terms of the Trust prohibited the assignment, he has

been aware of the two other bases for challenging the assignment since 2000. *See Harris*, 193 Ariz. 409, ¶ 16, 973 P.2d at 1169.

¶25 Milton claims the Trust's failure to provide him an accounting was a breach of trust, but he offers no explanation for failing to file an action based on the alleged breach since 2000. Nor does he explain why, twelve years after the assignment, he decided to seek an accounting to determine whether the consideration he received in 2000 was adequate. Milton also asserted that he had been coerced into making the assignment around the time he executed it. Thus, he clearly had knowledge of these bases for his petition for accounting since the assignment and substantial evidence supports the trial court's conclusion that the twelve-year delay in bringing this action is unreasonable. *See Harris*, 193 Ariz. 409, ¶ 16, 973 P.2d at 1169; *see also Gabitzsch*, 95 Ariz. at 19-20, 386 P.2d at 26.

¶26 In order to bar the claim based on laches, the unreasonable delay also must result in prejudice to the opposing party or the administration of justice. *Martin*, 219 Ariz. 556, ¶ 6, 201 P.3d at 519. As we have stated before, "[f]inality in the administration of estates" is a primary purpose of trust and probate law. *See In re Estate of Wood*, 147 Ariz. 366, 368, 710 P.2d 476, 478 (App. 1985); *see also In re Estate of Winn*, 214 Ariz. 149, ¶ 20, 150 P.3d 236, 240 (2007); A.R.S. § 14-1102(B)(3). This finality is "intended to protect the decedent's successors and creditors from disruptions to possession of the decedent's property." *Estate of Winn*, 214 Ariz. 149, ¶ 20, 150 P.3d at 240.

¶27 Milton waited twelve years after purportedly assigning his interest, during which the trustee died, the Trust was terminated, and its corpus distributed. Under the terms of the assignment, Milton's beneficial interest was placed in a separate trust for the benefit of Steven's and Carrie's children. Granting Milton's requested relief of setting aside the assignment, ordering an accounting, and freezing all Trust assets would involve reopening a terminated and distributed trust and undoing ten years of Trust management by a trustee who is now deceased and unavailable as a witness, as well as undoing the management by Steven and Carrie over the trusts established for their children's benefit. We find that,

as a matter of law, this would substantially prejudice Steve and Carrie and the administration of justice and undermine one of the primary goals of trust law. *See Martin*, 219 Ariz. 556, ¶ 6, 201 P.3d at 519; *see also Estate of Winn*, 214 Ariz. 149, ¶ 20, 150 P.3d at 240.

**¶28**         Accordingly, the trial court did not abuse its discretion in finding Milton's claim to set aside the assignment barred by laches.[6]   *See Rash*, 233 Ariz. 577, ¶ 17, 315 P.3d at 1240. Consequently, because Milton cannot challenge the assignment, he has no interest in the Trust as a beneficiary based on the invalid assignment of his interest and therefore does not have standing to seek an accounting on that basis. *See* § 14-10201(A).

**¶29**         Milton cites *Olympia Mining & Milling Co. v. Kerns*, 135 P. 255, 262 (Idaho 1913), for the proposition that "in an action by the cestui que trust or beneficiary against the trustee to enforce an express continuing trust, the defense of the statute of limitations or laches is never available to the defendant." Even if that were the law in Arizona, it would not change the result here. Indeed, the court in *Kerns* makes clear that the defense is available in circumstances like those before us, where there is no "express, continuing trust." *Id.* The Trust here terminated upon the trustee's death in 2010 and Milton did not file his petition until 2012. Had Milton filed his petition prior to the Trust's termination, it indeed would still have been a "continuing trust." Because Milton did not bring his action until after the termination of the Trust, the defense of laches is available to the Weinsteins under *Kerns*.

**¶30**         Milton additionally argues he has standing to seek an accounting because he reacquired an interest in the Trust through Bernard's will. He reasons that because he effectuated a power of attorney "coupled with an interest" in favor of Bernard, as trustee of the Trust, before his purported assignment, his father acquired an interest in the Trust which passed to Milton as a residuary beneficiary of Bernard's estate under Bernard's will. To the extent

---

[6]Because we are affirming the trial court's ruling based on laches, we need not address the Weinsteins' alternative argument that we may affirm based on the statute of limitations.

we must interpret the power of attorney executed by Milton, we conduct a de novo review. *See Anozira Dev., Inc.*, 149 Ariz. at 412, 719 P.2d at 298.

¶31 A general "power of attorney" is a "written instrument by which a principal designates another person as the principal's agent." A.R.S. § 14-5501(A). In contrast, a "'power [of attorney] coupled with an interest' means a power that forms a part of a contract and is security for money or for the performance of a valuable act." § 14-5501(E)(2). This latter type of power is not merely an interest in the exercise of the power, but an interest in the property over which the power operates. *Phx. Title & Trust Co. v. Grimes*, 101 Ariz. 182, 184, 416 P.2d 979, 981 (1966). A power coupled with an interest survives the person giving it and is irrevocable. *Id.* at 184-85, 416 P.2d at 981-82.

¶32 In June 1999, the Trust was amended to continue until the trustee's death and also stated that "each beneficiary agrees to execute an Irrevocable Special Power of Attorney coupled with an interest to Trustee, Bernard Weinstein, as his or her Attorney-In-Fact pertaining to any and all matters involving" the Trust. But the only power of attorney in the record is a "General Power of Attorney" executed by Milton in March 2000 in favor of Bernard. Although that power authorized Bernard to conduct a myriad of general business and financial matters on Milton's behalf, it made no specific reference to the Trust and states it can be revoked or terminated by Milton in writing at any time.

¶33 The power of attorney signed by Milton was thus only a general power authorizing Bernard to conduct any act related to any business transaction on Milton's behalf. *See* § 14-5501(A). Nothing in the document suggests it was specifically coupled with an interest in the Trust. Additionally, the power of attorney here expressly allowed Milton to revoke or terminate the power at any time, which is inconsistent with both the Amendment, which states that the special power of attorney shall expire on Bernard's death, and the irrevocable nature of a "power of attorney coupled with an interest." *See Grimes*, 101 Ariz. at 184, 416 P.2d at 981. Bernard did not therefore receive an interest in the Trust by way of the power of attorney, and, consequently, Milton did not inherit any interest in

14

the Trust as a residuary beneficiary of Bernard's will and does not have standing to seek an accounting on this basis.[7] *See* § 14-10201(A).

¶34 Milton, however, appears to argue that the terms of the power of attorney should be governed by its reference in the 1999 Amendment, rather than the executed power of attorney. And because the 1999 Amendment stated the power of attorney was "coupled with an interest," he claims we should conclude that Bernard acquired an interest in the Trust which survived his death and passed through his will to Milton as a residuary beneficiary. But Milton cites no authority for his proposition that a reference to an intent to execute a power of attorney would either carry any legal weight by its own terms or trump the terms of the actual power of attorney he executed. Because the executed power of attorney did not grant Bernard any interest in the Trust, we consequently reject Milton's argument that the description provided in the 1999 Amendment is controlling as a matter of law.

¶35 Milton's only factual support on this issue is his assertion that the executed power of attorney explicitly states it covers "all proceeds and investments made therefrom, in accounts held by Prudential Securities known as the Special Account and Marana Trust Account, together with all other funds derived from said Trust presently in any financial institutions." Milton's claim, however, misrepresents the record. The quoted language does not appear anywhere in the power of attorney signed by Milton, but instead appears in the 2000 assignment of his beneficial interest in the Trust. The power of attorney signed by Milton in favor of Bernard makes no mention of the Trust or any accounts in particular. Milton has thus not provided any legal or factual support for his assertion that the power of attorney executed by Milton was "coupled with an interest." Accordingly, we reject his

_____

[7]Milton does not cite any authority that a special power of attorney coupled with an interest that terminates on Bernard's death would convey an inheritable estate to Milton. But, having decided no special power of attorney with an interest was given, we need not decide that issue.

argument that the power of attorney gave Bernard an interest in the Trust which passed to Milton as a residuary beneficiary under Bernard's will.

¶36        Milton also suggests he inherited an interest in Trust property because as a residuary beneficiary of Bernard's will, he acquired an interest in an account that commingled personal and Trust funds.  Milton reasons that because of the commingling, the entire account must be treated as Trust funds and he therefore inherited an interest in Trust property.  When the material facts are not disputed, we review questions of law de novo.  *Pinal Vista Properties, L.L.C. v. Turnbull*, 208 Ariz. 188, ¶ 6, 91 P.3d 1031, 1032-33 (App. 2004).

¶37        A trustee is under a duty to "keep trust property separate from the trustee's own property."  A.R.S. § 14-10810(B).  When a trustee commingles trust funds with his own personal funds, "the entire commingled mass should be treated as trust property except in so far as the trustee may be able to distinguish what is his."  *Hurst v. Hurst*, 1 Ariz. App. 603, 607, 405 P.2d 913, 917 (1965).  When such commingling occurs, it is "incumbent upon the trustee . . . to distinguish his personal funds."  *Id.*  If he cannot, any claimed personal assets must be treated as trust assets.  *Id.*

¶38        In his will, Bernard listed a "1/4 interest" in the "Marana Trust account" as his sole and separate property which was bequeathed equally among Steven, Carrie, and Milton as residuary beneficiaries.  Under the assets that he held as trustee of the Trust, he listed a "3/4 interest in Marana Trust account."  We agree with the Weinsteins that the terms of Bernard's will show that he, as trustee, could distinguish his personal funds from Trust property.  *See id.*  Milton has not provided any additional evidence as to what would inhibit the simple division of the account according to the terms of Bernard's will, or that Bernard's division was incorrect.  We therefore conclude that Milton has not shown he reacquired an interest in the Trust by way of his inheritance under his father's will.

¶39        Thus, because Milton cannot challenge the assignment of his interest in the Trust, and he did not reacquire an interest in the

Trust via Bernard's will, he is not a beneficiary of the Trust and has no property interest in the Trust. Consequently, the trial court correctly found that he is not an "interested person," and has no standing to petition for an accounting. *See* § 14-10201(A).

**Attorney Fees**

¶40 Milton additionally argues the trial court abused its discretion by awarding the Weinsteins' their attorney fees pursuant to A.R.S. § 14-11004(B)[8] because their affidavit did not comply with Rule 33, Ariz. R. Prob. P., governing the compensation for fiduciaries and attorneys under Title 14, or the Arizona Code of Judicial Administration § 3-303 ("ACJA"). That section of the ACJA sets the statewide fee guidelines for determining reasonable compensation by professionals in Title 14 proceedings. The Weinsteins, however, ask us to find those rules are not applicable to this case.

¶41 We review an award of attorney fees for an abuse of discretion and view the record in the light most favorable to upholding the trial court's decision. *Solimeno v. Yonan*, 224 Ariz. 74, ¶ 36, 227 P.3d 481, 489 (App. 2010). "'We will not disturb the trial court's discretionary award of fees if there is any reasonable basis for it.'" *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, ¶ 18, 99 P.3d 1030, 1035 (App. 2004), *quoting Hale v. Amphitheater Sch. Dist. No. 10*, 192 Ariz. 111, ¶ 20, 961 P.2d 1059, 1065 (App. 1998). However, we review questions related to the interpretation or application of court rules de novo. *Haroutunian v. Valueoptions, Inc.*, 218 Ariz. 541, ¶ 22, 189 P.3d 1114, 1122 (App. 2008).

¶42 Pursuant to § 14-11004(B), a court "may order that a party's reasonable fees, expenses and disbursements" arising out of "the good faith defense or prosecution of a judicial . . . proceeding involving the administration of the trust" be paid by "any other party . . . that is the subject of the judicial proceeding." Rule 33 delineates the requirements for an application of fees by an attorney representing a fiduciary in Title 14 proceedings, and in subsection

---

[8] Neither party challenges the applicability of A.R.S. § 14-11004(B).

(F) states the court must follow the guidelines set forth in the ACJA. But the comment to Rule 33 states the "rule applies only to those circumstances in which . . . an attorney seeks compensation from the estate of a ward or protected person, a decedent's estate, or a trust," but does not apply "when a party has requested that the court award the party attorneys' fees against another party." The ACJA additionally specifies that its guidelines do not apply "[w]hen the fees are not paid by the Estate." § 3-303(B)(2)(b)(2).

¶43 Here, the trial court granted the Weinsteins' request for an award of attorney fees to be entered against Milton pursuant to § 14-11004(B). Because the Weinsteins did not request, and were not awarded, any reimbursement from the Trust itself, Rule 33 and ACJA § 3-303 are not applicable in this situation. Consequently, Milton's argument that the Weinsteins' award of attorney fees should have been reduced or denied based on noncompliance with those rules fails.

**The Weinsteins' Cross-Appeal**

¶44 In their cross-appeal, the Weinsteins first ask this court to conduct a de novo review of the attorney fees award because the trial court did not explain its reasoning for the amount it awarded in its minute entry. The Weinsteins rely on our recommendation that trial courts "indicate on the record the factors taken into account and reasons for [reducing] a discretionary fee award." *Kadish v. Ariz. State Land Dep't*, 177 Ariz. 322, 326, 868 P.2d 335, 339 (App. 1993); *see also Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985). Although doing so is "the better practice," a court is not required to provide a factual basis for a fee award. *Kadish*, 177 Ariz. at 326, 868 P.2d at 339; *Orfaly*, 209 Ariz. 260, ¶ 25, 99 P.3d at 1037. "As long as the record reflects a reasonable basis for the award, we will uphold it." *Id.*; *see also Kadish*, 177 Ariz. at 326-27, 868 P.2d at 339-40.

¶45 The Weinsteins provide no legal support for their proposition that when a fee award does not contain a detailed factual basis, it should be subject to a de novo review. Consequently, we reject that argument and review their challenge to the attorney fees award for an abuse of discretion. *See Hunt Inv. Co.*

*v. Eliot*, 154 Ariz. 357, 362, 742 P.2d 858, 863 (App. 1987).  "The trial court may reduce the amount of requested fees and, absent a clear abuse of discretion, the award will not be disturbed on appeal."  *Id.*

**¶46**　　　The Weinsteins argue the trial court abused its discretion by awarding them an amount that was lower than what they requested.  They contend that because Milton did not meet his burden of demonstrating why the Weinsteins' billing entries were "immaterial, irrelevant or otherwise unreasonable," the trial court was obligated to award the Weinsteins the total amount of fees they requested.

**¶47**　　　A party seeking an award of attorney fees has the burden of presenting an affidavit indicating "the type of legal services provided, the date the service was provided, the attorney providing the service (if more than one attorney was involved in the appeal), and the time spent in providing the service."  *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 188, 673 P.2d 927, 932 (App. 1983).  Once the application has been submitted, "the burden shifts to the party opposing the fee award to demonstrate the impropriety or unreasonableness of the requested fees."  *Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, ¶ 38, 167 P.3d 1277, 1286 (App. 2007); *see also State ex rel. Corbin v. Tocco*, 173 Ariz. 587, 594, 845 P.2d 513, 520 (App. 1992).  A party challenging the amount of fees requested must provide specific references to the record and specify which amount or items are excessive.  *Tocco*, 173 Ariz. at 594, 845 P.2d at 520.  "'[A]n opposing party does not meet his burden merely by asserting broad challenges to the application.  It is not enough . . . simply to state, for example, that the hours claimed are excessive and the rates submitted too high.'"  *Id.*, *quoting State v. Maricopa Cnty. Med. Soc'y*, 578 F. Supp. 2d 1262, 1264 (D. Ariz. 1984); *see also Inspiration Consol. Copper Co. v. Ariz. Dep't of Revenue*, 147 Ariz. 216, 234, 709 P.2d 573, 591 (App. 1985) (state's assertions that amount requested far exceeded its own fees without references to specified billing items insufficient), *disapproved of on other grounds by Cyprus Bagdad Copper Corp. v. Ariz. Dep't of Revenue*, 188 Ariz. 345, 348, 935 P.2d 923, 926 (App. 1997).

**¶48**　　　Here, the Weinsteins submitted a sufficient *China Doll* affidavit to the trial court requesting a total of $17,833.45 in fees and

costs. Milton submitted an objection to that affidavit, identifying two specific examples of charges he considered unreasonable.[9] First, he argued the thirty-six hours spent on the motion for summary judgment and twenty-two hours spent on the reply were excessive and not justified because the legal issues involved in the case were not particularly novel. Milton additionally argued the 2.5 hours spent preparing the form of judgment and *China Doll* affidavit was excessive because "its preparation is mostly secretarial." The trial court issued an order awarding the Weinsteins $11,282.25, but did not indicate in the minute entry its reasons for awarding that amount. A hearing on the matter was then held, during which the court indicated it had reduced the award because it found the hours spent on the summary judgment motion and reply "excessive." Following the hearing, the court issued another order, vacating its earlier ruling on the attorney fees, and ordering the Weinsteins be awarded $11,874 but again did not indicate its reasons for that amount.

¶49 Milton's two specific challenges to the Weinsteins' affidavit were sufficient to allow the trial court to make a finding of reasonableness on the amount of fees it awarded the Weinsteins. *See Tocco*, 173 Ariz. at 594, 845 P.2d at 520. Additionally, following the hearing, the court raised the amount of fees it awarded. The court could therefore have found the Weinsteins' explanation for its fees adequately justified a higher amount, although not the entire amount requested. *See id.* Consequently, because Milton's objections to the Weinsteins' affidavit were sufficient and "the record reflects a reasonable basis for the award," we cannot say the court abused its discretion in determining the amount of fees

---

[9] Milton also argued the total amount of fees sought was "unreasonable on its face" and were double his attorney fees. However, this type of broad challenge is insufficient to demonstrate the amount requested is unreasonable. *See Tocco*, 173 Ariz. at 594, 845 P.2d at 520; *Inspiration Consol. Copper Co.*, 147 Ariz. at 234, 709 P.2d at 591. We therefore consider only the sufficiency of his objections to the specified billing entries.

awarded to the Weinsteins. *See Orfaly*, 209 Ariz. 260, ¶ 25, 99 P.3d at 1037.

**¶50** The Weinsteins rely on *Tocco* to support their argument that Milton's challenges to the approximately sixty hours spent on the summary judgment motions and 2.5 hours to the form of judgment and affidavit were insufficient as a matter of law. In that case, Tocco challenged the "relevancy of 4.5 specific hours of time billed and of 42.2 hours of billings in general" and additionally asserted "'the billings submitted may contain items which are irrelevant or immaterial.'" *Tocco*, 173 Ariz. at 594-95, 845 P.2d at 520-21 (emphasis omitted). The court found that the challenges to the specific time entries were proper, but that the generalized objection was insufficient to demonstrate the affidavit contained irrelevant or immaterial items. *Id.* Thus, *Tocco* does not support the Weinsteins' argument, but rather supports a finding that Milton's objections to the specified time entries were sufficient to raise the issue of reasonableness. Accordingly, the Weinsteins' argument fails.

### Attorney Fees on Appeal

**¶51** Both the Weinsteins and Milton have requested their attorney fees and costs pursuant to A.R.S. § 14-11004(B). Under that statute, a court "may order that a party's reasonable fees, expenses and disbursements . . . be paid by any other party . . . that is the subject of the judicial proceeding." § 14-11004(B). In our discretion, we grant the Weinsteins' request upon their compliance with Rule 21, Ariz. R. Civ. App. P. We deny Milton's request.

### Disposition

**¶52** For the foregoing reasons, we affirm the judgment of the trial court.