NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

In re the Matter of the Guardianship of and Conservatorship for:

JAMES E. LANGE, An Adult.

---

JAMES P. LANGE, *Petitioner/Appellee*,

*v.*

RENE SELF, *Respondent/Appellant.*

No. 1 CA-CV 22-0784
FILED 10-31-2023

---

Appeal from the Superior Court in Maricopa County
No. PB2021-002512
The Honorable Amy Michelle Kalman, Judge, *Pro Tempore*

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED**

---

COUNSEL

Udall Shumway PLC, Mesa
By Roger C. Decker, Timothy D. Butterfield
*Counsel for Respondent/Appellant Rene Self*

Warner Angle Hallam Jackson & Formanek PLC, Phoenix
By Jerome K. Elwell, Phillip B. Visnansky
*Counsel for James E. Lange*

Banker Law Office, PLLC, Scottsdale
By Yvette N. Banker
*Counsel for Appellee, James P. Lange*

---

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Chief Judge David B. Gass joined.

---

**J A C O B S**, Judge:

¶1        Rene Self ("Rene"), formerly a trustee of the Lange Family Trust (the "Trust") that her stepfather James Lange ("James") and her mother Robbie Lange ("Robbie") created, appeals three rulings of the probate court.  First, Rene argues the court should not have found the 2019 Amendments to the Trust that increased her eventual inheritance void for lack of James' testamentary capacity.  Second, she asks that we direct the probate court to increase its award of fees to her for seeking to preserve her role as trustee.  Third, she challenges the court's order that she pay James' and her brother J.P.'s attorneys' fees incurred in this probate dispute.  We reverse the probate court's order voiding the 2019 Amendments, given that James had testamentary capacity at the time her parents executed the amendment.  We affirm the attorneys' fees rulings as supported by the record.

**FACTS AND PROCEDURAL HISTORY**

**A.    James and Robbie Lange Establish the Lange Family Trust and Amend It in 2019 and 2020.**

¶2        James and Robbie were married.  James is the biological father of J.P. Lange and the stepfather to Robbie's two children, Rene and Rob Self.  James and Robbie also adopted Tonya Llewellen.  James and Robbie created the Trust on July 12, 1999, to conserve their assets and benefit themselves and their children.  James and Robbie amended and restated the Trust on October 6, 2016, with help from attorney Karen Sinchak.

¶3        In February 2019, James suffered a brain aneurysm that required surgery.  On October 8, 2019, James and Robbie amended the

Trust's schedules with help from attorney Kenneth Royer. The 2019 Amendments changed how assets would be distributed upon the deaths of James and Robbie in favor of Rene, increasing her share from 30% to 60%. At that time, James also signed a Medical Power of Attorney appointing Robbie as agent and Rene as secondary agent.

¶4 On March 1, 2020, James and Robbie again amended the Trust, this time adding Rene as co-trustee. Although attorney Royer prepared the 2020 Amendments, he did not see James or Robbie sign them. During this time, James lived in an assisted living facility, and Robbie was in hospice. Robbie passed away nine days later, on March 10, 2020.

¶5 Once Robbie passed, Rene became co-trustee with James and managed his care as his agent under the Power of Attorney and the Medical Power of Attorney. In May 2020, Rene had attorney Royer prepare a Beneficiary Deed that conveyed trust property worth over $750,000 to Rene upon James' death. James signed the Deed in the presence of Rene and a notary.

**B. J.P. Files Petitions to Appoint a Temporary and Permanent Conservator Over James and the Court Suspends Rene as Trustee and Appoints J.P. as Temporary Conservator.**

¶6 J.P., unable to maintain regular contact with his father, believed Rene was isolating James and filed an Emergency Petition for Appointment of Temporary Conservator (Without Notice) and a Petition for Appointment of Permanent Conservator on June 1, 2021. J.P. alleged Rene was financially exploiting James through her authority under James' Healthcare Power of Attorney and Durable Financial Power of Attorney, and as the Co-Trustee and Grantor of the Lange Family Trust. J.P. also alleged Rene improperly sold part of James' prize collection of antique cars, and withheld from James his cell phone and laptop computer. J.P. also alleged Rene installed cameras and listening devices in James' home to help confine him.

¶7 The probate court scheduled an Electronic Emergency Hearing for June 7, 2021, on James' Emergency Petition, and suspended Rene's authority under the Powers of Attorney and as successor trustee pending further orders. While J.P. served Rene with a copy of the Notice of Hearing and Petition on June 5, 2021, Rene was not able to obtain counsel for the hearing due to the short notice.

¶8        At the June 7 hearing, the court heard testimony from James, Rene, J.P., William Goodwin, and Judy Lafferty.  Several witnesses testified as to their limited or non-existent contact with James and that it was difficult to see or talk to James.  While Rene claimed she was following COVID-19 safety protocols, this did not explain the lack of distanced visits, video chats, and calls.  James testified he wanted to see J.P. and wanted someone other than Rene to manage his care.  The court noted that Rene was defensive and failed to give clear answers during her testimony.  Rene does not challenge the court's finding that her testimony was not credible.

¶9        After hearing all the testimony, the court found that James was an incapacitated person under A.R.S. § 14-5101 as of June 7, 2021.  The court appointed J.P. as the temporary conservator of his father, James and sua sponte appointed him temporary guardian as well.  The court also appointed a statutory representative for James to investigate and provide an opinion as to who should be appointed permanent guardian and conservator.

### C.        J.P. Moves to Set Aside the 2019 and 2020 Amendments, After Which the Court Voids Them and Removes Rene Permanently as Trustee.

¶10        On June 30, 2021, J.P. moved to suspend Rene's administration of the Trust and to appoint a successor trustee for the Trust and permanent guardian for James.  On July 13, 2021, Rene cross petitioned, asking the court to recognize her as the trustee of the Trust going forward.  That day, the statutory representative filed a Cross Petition for the Appointment of Zia Trust as successor trustee and successor conservator.  The court enjoined Rene from administering the Trust in an Order filed August 2, 2021.  On April 15, 2022, the court appointed J.P. as permanent guardian and conservator.

¶11        On July 8, 2022, the court held a hearing concerning the validity of the Trust Amendments, Beneficiary Deed, and Rene's role as co-trustee.  James and J.P. both argued the Beneficiary Deed was invalid and the 2019 Amendments were also invalid because James lacked capacity and Robbie did not segregate her portion of the community property.  The court held the 2019 and 2020 Amendments and the May 2020 Beneficiary Deed void as to James' interests because of Rene's undue influence over James.  The court examined factors that would suggest the presence or absence of undue influence on Rene's behalf and weighed the testimony of experts.  The court found that Rene constantly told James

that J.P. was after his money, that James was a person susceptible to influence, and that Rene isolated James and reinforced his dependency. Further, Rene's changes to the Trust were made in secret, and the only other beneficiary who knew was Robbie when she was alive. The court explained the 2019 and 2020 Amendments were rushed and inappropriate since James was still in recovery. Moreover, Rene procured the changes to the Trust and the Beneficiary Deed that drastically increased her assets. The court found Rene's testimony not credible.

¶12 Despite that, the court found there was "not sufficient evidence to rebut the presumption that James E. Lange possessed testamentary capacity on October 8, 2019." The court explained testamentary capacity was compatible with legal incapacity under A.R.S. § 14-5101, and with impaired judgment and memory. The court's ruling about the 2019 Amendments was thus grounded in undue influence and not incapacity.

¶13 The court also analyzed whether Robbie's changes to the Trust in favor of Rene within the 2019 Amendments could be valid, independent of the undue influence that voided Jim's changes. The court determined Robbie's changes were not valid. The court relied on Section 4.1 of the Trust, which provides:

> **4.1 Trust During Our Joint Lifetimes.** *While we are both living and competent, any terms of this agreement dealing with our joint property or community property may be amended or revoked by both of us*; in addition, each of us may amend any provision insofar as it governs the administration and distribution of his or her one-half interest in the joint or community property following his or her death. Either of us may amend or revoke any terms of this agreement dealing with his or her separate property. *During any period in which either of us is incompetent, the other one may segregate his or her one-half portion of any joint or community property and thereafter may amend or revoke this instrument with respect to such portion*; this agreement shall not be subject to amendment or revocation with respect to the community or joint property portion of the one of us who is incompetent.

(Emphasis added).

¶14 Interpreting Section 4.1, the court reasoned that Robbie could have made the changes in favor of Rene if she had segregated her

assets before doing so. The court's ruling that Robbie's changes in favor of Rene were void was thus premised on the conclusion that James was not competent at the time of the 2019 Amendments.

¶15        Finally, the court removed Rene as co-trustee of the Trust. The court made several findings in support of its ruling. First, Rene rarely allowed James to see friends and she rarely gave him money to cover things like lunch. Second, Rene was not cooperative in J.P.'s transition as successor trustee and let insurance policies lapse. Third, Rene was self-interested when she procured the Beneficiary Deed and breached the Trust in her role as co-trustee. From all this, the court reasoned it was appropriate to remove Rene as a trustee.

### D.        The Probate Court Awarded J.P. Attorneys' Fees He Requested, and Awarded Rene Some But Not All of the Attorneys' Fees She Requested.

¶16        In the wake of these rulings, James sought attorneys' fees and costs to be paid by the Trust and requested the Court enter judgment against Rene to reimburse the Trust. James argued A.R.S. §§ 14-5314(B) and 14-5414(B) supported a judgment against Rene for fees and costs related to the guardianship and conservatorship proceedings in the amount of $14,021.50 because Rene was unsuccessful in her cross petitions. Rene argued that James' counsel could not invoke A.R.S. §§ 14-5314(B) and 5414(B) as bases for a fee award, because he was not counsel throughout and because there was no court-appointed attorney at the time Rene's litigation conduct caused James to incur certain fees. The court rejected Rene's argument ruling that James' counsel was counsel for the entire litigation matter, and not just for a particular petition or segment of the litigation.

¶17        James also argued that A.R.S. § 14-1105 supported a judgment against Rene for the trustee proceedings in the amount of $4,560 because Rene unreasonably continued to pursue appointment as successor trustee after the court found Rene serving as a fiduciary was not in James' best interests. Alternatively, James argued A.R.S. § 14-10004 also supported the same judgment. Rene argued her conduct was reasonable and that A.R.S. § 14-10004 suggested the Trust should reimburse her fees. The court found Rene did not act in good faith because she knew James wanted a third-party fiduciary and she continued to seek appointment as a trustee. The court thus approved James' request for attorneys' fees and costs to be reimbursed by the Trust and entered judgment against Rene

for $18,581.50 to pay a portion of those fees and costs and directed her to reimburse the Trust.

¶18     J.P. sought fees and costs to be paid by the Trust and a judgment against Rene to reimburse the Trust $131,527.17 pursuant to A.R.S. §§ 14-5314, 14-5414, and 14-1105(B). Rene argued her actions were not unreasonable, but even if she was, § 14-1105 only permits the ward or ward's estate to be reimbursed. The court ruled J.P. was entitled to be paid from the Trust after his successful petition for appointment as guardian and conservator pursuant to A.R.S. §§ 14-5314 and 14-5414. J.P.'s expenses in pursuit of his petition were recoverable against Rene because she unreasonably expanded the proceedings. The court determined that Rene prevented a timely and reasonable resolution of the case. Still, the court concluded that Rene was not responsible for all of J.P.'s fees and costs and deducted $50,000 from his request. The court approved J.P.'s request for attorneys' fees and costs to be reimbursed by the Trust and entered judgment against Rene for $81,527.17 to pay a portion of those fees and costs and directed her to reimburse the Trust.

¶19     Rene petitioned for fees and costs in the amount of $60,408.22 and sought reimbursement for attorneys' fees and costs she paid out of pocket in the amount of $17,704.25. Rene argued she was authorized by the Trust to defend "at the expense of the trust estate, any contest or other attack of any nature on this trust or any of its provisions." The court denied Rene's request for fees and costs that were related to the guardianship and conservatorship proceedings but approved $25,845.52 in attorneys' fees to be paid by the Trust that were related to the successor-trustee litigation. Notably, the court deducted $5,000 from the remaining amount of fees because the court did not find that Rene acted in good faith by prolonging the proceedings after the court determined that she could not serve as a fiduciary. However, the court granted Rene's petition for reimbursement in the amount of $17,704.25 in fees and costs that were to be paid from the Trust.

¶20     The court entered judgment against Rene directing her to reimburse the Trust $18,581.50 for James' attorneys' fees and costs that related to both the guardianship/conservatorship proceedings as well as the trustee proceedings. The court also entered judgment against Rene directing her to reimburse the Trust $81,527.17 for J.P.'s fees and costs.

## DISCUSSION

**I.    Because James Was Presumed to Have Testamentary Capacity in 2019, the Probate Court Erred by Voiding the 2019 Amendments as to Robbie's Share of the Community Property.**

**¶21**         We review *de novo* the interpretation of a written instrument like the Trust. *In re Indenture of Tr. Dated January 13, 1964*, 235 Ariz. 40, 44 ¶ 7 (App. 2014). Rene appeals the probate court's ruling that the 2019 Amendments were void because Robbie did not segregate her half.[1] Rene argues that it was not necessary for Robbie to segregate her half for the 2019 Amendments to be valid under Section 4.1 of the Trust, because there was no showing that James lacked testamentary capacity at that time.

**¶22**         We agree. Article 4 of the Trust sets out how James and Robbie could amend or revoke provisions of the Trust. Section 4.1 of the Trust explains when Robbie or James could have amended or revoked the trust during their joint lifetimes. While both were living and competent, James and Robbie could jointly amend any terms regarding joint property or community property. James and Robbie could also individually amend any provision applying to their one-half interest in the joint or community property following their death. However, if either James or Robbie were incompetent, then the other, competent spouse would need to segregate their one-half portion of any joint or community property before amending or revoking the Trust with respect to that portion. The court rested its ruling invalidating the 2019 Amendments on James' incapacity at the time of the June 2021 hearing.

**¶23**         We conclude that Section 4.1 of the Trust, read against the court's findings of fact to which we defer, requires us to reverse its finding that the 2019 Amendments that increased Rene's share of Robbie's portion of the Trust as void, for three reasons.

**¶24**         First, no one determined that James was incompetent at the time of the 2019 Amendments. The probate court could have ruled that James lacked capacity in 2019, but did not. To the contrary, it held that there was "not sufficient evidence to rebut the presumption that James . . . possessed testamentary capacity on October 8, 2019." Indeed, after

---

[1] Because the validity of the 2019 Amendments resolves the question we address, we do not discuss the 2020 Amendments in this section, though the parties litigated the validity of both sets of amendments.

hearing James testify at the evidentiary hearing, the probate court declared him "high functioning," and the transcript well supports that factual finding.

¶25 Second, while the court noted the amendments happened after James' brain aneurysm which appeared to have caused the incapacity, that is not the same as finding the incapacity predated the 2019 Amendments.

¶26 Third, the probate court took care to separate its June 7, 2021 finding of incapacity under A.R.S. § 14-5101 from its finding that there was no showing that James lacked testamentary capacity at the time of the 2019 Amendments. Since there was no finding of incapacity, and there is what amounts to an acknowledgment of James' testamentary capacity at the time of the 2019 Amendments, Robbie did not need to segregate her portion of any joint or community property. The language of Section 4.1 of the Trust, together with the probate court's findings of fact to which we defer, leads us to hold that the 2019 Amendments are valid as to Robbie's portion of the Trust assets.

## II. The Probate Court Did Not Abuse Its Discretion in Awarding James and J.P. Attorneys' Fees and Costs, Awarding Rene Some Fees and Costs, and Denying Rene's Other Requests.

¶27 Rene appeals the court's awards to James and J.P. of attorneys' fees and costs in the guardianship/conservatorship litigation and the successor trustee litigation. Rene also appeals the court's denial of a portion of her attorneys' fees and costs. We review these challenges for abuse of discretion and in the light most favorable to upholding the superior court's decision. *Indenture of Tr. Dated January 13, 1964*, 235 Ariz. at 51 ¶ 41.

### A. The Probate Court Did Not Abuse Its Discretion by Awarding James Some Attorneys' Fees and Costs Under A.R.S. § 14-1105 and A.R.S. § 14-11004(B) Because Rene's Conduct Was Neither Reasonable Nor in Good Faith.

¶28 Finding much of Rene's conduct unreasonable or in bad faith, the probate court awarded James $4,560 of attorneys' fees from Rene personally under A.R.S. § 14-1105, which allows awards of fees and expenses as a remedy for unreasonable conduct in trusts and guardianship or conservatorship cases. The court likewise premised the same award on A.R.S. § 14-11004, which provides an alternative path to recovering attorneys' fees and costs from a trust or any party in trust

actions. *See* A.R.S. § 14-11004(A) (entitling trustee to be reimbursed from trust for "reasonable fees, expenses, and disbursements, including attorney fees and costs that arise out of and relate to the good faith defense or prosecution of a judicial . . . proceeding involving the administration of the trust."); A.R.S. § 14-11004(B) (allowing court to "order that a party's reasonable fees, expenses and disbursements . . . be paid by any other party or the trust that is the subject of the judicial proceeding.")

¶29      Rene argues her conduct was reasonable and that A.R.S. § 14-11004(A) entitles her to reimbursement of her attorneys' fees by the Trust. For A.R.S. § 14-11004(A) to apply, Rene must have acted in good faith. To find "good faith," there must be an "objective determination based on all of the circumstances." *In re Guardianship of Sleeth*, 226 Ariz. 171, 178 ¶ 30 (App. 2010).

¶30      The court did not abuse its discretion when it determined that Rene did not act in good faith because, as the court noted, Rene continued to seek appointment as a trustee even after James expressed his desire for a third-party fiduciary and after the first evidentiary hearing in which the court expressed its own concerns about Rene continuing in that role. As the court found, "Rene continued to pursue goals that held up a timely and reasonable resolution of this case past the point of reasonableness." This finding is supported by the record.

> **B.      The Probate Court Did Not Abuse Its Discretion by Awarding James and J.P. Attorneys' Fees and Costs under A.R.S. §§ 14-5314(B) and 5414(B) Because It Denied Rene's Cross-Petition, and She Unreasonably Expanded the Guardianship/Conservatorship Proceedings.**

¶31      Rene challenges the award to James of $14,021.50 and J.P. of $81,527.17 of attorneys' fees and costs in the guardianship/ conservatorship proceedings. *See* A.R.S. §§ 14-5314(B) and -5414(B) (authorizing awards of attorneys' fees in guardianship and conservatorship matters where petitions are denied). In considering awards of fees under these statutes, the court may consider any evidence it deems appropriate. A.R.S. § 14-5314(B); A.R.S. § 14-5414(B).

¶32      Rene argues that the language of the Trust authorized her "to defend, at the expense of the trust estate, any contest or other attack of any nature on [the Trust] or any of its provisions" so that any fees and costs owed must be chargeable to the estate and not her personally. She

further argues that the cross-petition she filed to preserve her prerogatives as guardian and conservator was in line with her defense of the Trust. Rene contends that her defense against J.P.'s petition could not be limited to the argument that he was not nominated to serve as such under the Trust because "someone needed to be appointed based on the rulings already made by the court."

¶33　　　　The record supports the court's findings that Rene's positions were not reasonable and did not reflect good faith. Before Rene's July 13, 2021 cross-petition, the court had already made the decision that she was not appropriate to serve as guardian and conservator. The court appointed J.P. as temporary guardian and conservator on June 7, 2021, because Rene could no longer discharge those responsibilities to James. Further, the court appointed a statutory representative for James to provide an opinion as to who should serve as a permanent guardian and conservator, which provided a vehicle for any further consideration of that issue. Confirming the lack of need for her to raise the issue separately, Rene's cross-petition and other petitions were denied. The superior court's finding that Rene unreasonably expanded the proceedings after being removed from her responsibilities for James' care was no abuse of discretion. *See Indenture of Tr. Dated January 13, 1964*, 235 Ariz. at 51 ¶ 41. Moreover, J.P. prevailed in his petition for appointment as guardian and conservator, and Rene's cross-petition was denied due to her unreasonable expansion of the proceedings. For these reasons, A.R.S. §§ 14-5314(B) and -5414(B) provide bases for Rene's personal responsibility for James and J.P.'s fees and costs related to those proceedings.

> **C.　The Probate Court Did Not Abuse Its Discretion by Granting Rene's Petition for Some Attorneys' Fees and Costs and in Denying Her Other Requests.**

¶34　　　　Though the court awarded Rene $17,704.25 in fees and costs that Rene paid out of pocket and $25,845.52 in additional attorneys' fees, Rene argues that the court erred by denying her reimbursement for an additional $78,111.95 in fees and costs. We see no abuse of discretion in the probate court's award, for several reasons.

¶35　　　　First, the court had a reasonable basis for determining that Rene's fees and costs be reduced by $29,562.18 for the guardianship/conservatorship proceedings because she "unreasonably expanded the proceedings." That finding is well-supported by the record.

¶36        Second, the court showed its fair consideration of Rene's request by awarding Rene some fees, while carving out as disallowed only those related to the guardianship and conservatorship proceedings in which she acted in bad faith. The court granted her petition to be reimbursed $12,364.25 in fees and $5,340.00 in costs that she paid out of pocket to counsel and an additional $25,845.52 in attorneys' fees that were both to be paid by the Trust. This award is also supported by the record, reflecting the differential merit of Rene's conduct of different aspects of this litigation.

¶37        Third, the court deducted $5,000 in fees and costs not related to the combined guardianship and conservatorship proceeding only after weighing the effect of Rene's bad faith conduct. Because we find the court's finding of bad faith supported by the record, this deduction was likewise within the court's discretion.

¶38        In sum, the court's award of fees in favor of Rene, reflecting these deductions, is supported by the record and is not an abuse of discretion.

### III.    Rene Did Not Raise the Issue of the Forfeiture Clause Under Section 19.1.3 of the Trust Before the Probate Court, Thus Waiving It.

¶39        Finally, we reject Rene's argument that the probate court erred by refusing to void J.P.'s interest in the Trust under its no-contest clause. Rene is right that Section 19.1.3 of the Trust is a forfeiture clause triggered by challenges to the Trust. But J.P. is likewise correct that Rene failed to move the probate court to apply this provision against him.

¶40        Because Rene did not move the probate court to declare J.P.'s interest forfeited, she has waived that issue. *See, e.g., Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535 ¶ 18 (App. 2007) ("Generally, arguments raised for the first time on appeal are untimely and deemed waived.").

¶41        Likewise, we generally only review arguments a party supports and develops. Rene's opening brief does not develop the position that J.P. had forfeited his interest in the Trust, as by detailing in the record her efforts to develop or preserve this issue below. *See Polanco v. Industrial Comm'n of Arizona*, 214 Ariz. 489, 491 ¶ 6 n. 2 (App. 2007) (holding that an argument mentioned in passing with no citation to relevant supporting authority was an undeveloped and unsupported argument waived on appeal). Rene suggests in her reply brief in this court that she mentioned the issue in a post-judgment motion before the

probate court.  Yet even that post-trial motion, she concedes, "did not request the Court rule on the forfeiture issue at that time."

**¶42**　　　　For these reasons, the probate court did not err by declining to declare J.P.'s interest in the Trust forfeited.

## CONCLUSION

**¶43**　　　　For the reasons stated, we affirm in part and reverse in part. We affirm the probate court's awards of attorneys' fees.  We remand to the probate court for entry of an order consistent with this decision concerning the validity of the 2019 Amendments as they concern Rene's heritable share of Robbie's share of the Trust.  Finally, we exercise our discretion to deny the parties attorneys' fees and costs pursuant to A.R.S. § 14-11004 and A.R.S. § 14-1105 for their work in this court.



AMY M. WOOD • Clerk of the Court
FILED:　　AA